CHARLES FEATHERLY CONSTRUCTION COMPANY v
PROPERTY DEVELOPMENT GROUP, INC

Docket No. 58119. Argued May 4, 1977 (Calendar No. 5).—Decided
June 2, 1977.

Plaintiff Charles Featherly Construction Company constructed
condominium units for which it claims not to have been fully
paid. Plaintiff filed a complaint seeking payment for the work
and materials it furnished during the construction of the units
against defendants Property Development Group, Inc., Cedar
Cove, Metafor, Inc., Ralph T. Bergsma, Arthur M. Klurstein,
Alexander M. Butcher, R.B.A. Properties, Butcher & Associ-
ates, Inc., Northern States Mortgage & Realty Investors, Mac-
Gregor Plumbing and Heating, Inc., and Kelly Mortgage &
Investment Company. The Emmet Circuit Court, Martin B.
Breighner, J., found that the plaintiff was subject to the resi-
dential builders licensing act and granted defendants an accel-
erated judgment because the plaintiff did not have a residential
builder's license. The trial court also ruled against the plaintiff
on other questions of law and fact. The Court of Appeals, D. E.
Holbrook, P. J., and T. M. Burns and D. E. Holbrook, Jr., JJ.,
granted defendants' motion to affirm (Docket Nos. 23482, 23483,
25040). Plaintiff appeals. *Held:*

1. The residential builders licensing act defines a class of
plaintiffs—residential builders—and prohibits them from bring-
ing or maintaining any action in any court of this state unless
they have a residential builders license. The prohibition is not
described as a defense that may only be asserted in certain
situations. It is a penalty that divests the unlicensed builder of
the power to sue. The status of the defendant is not treated as
*an important consideration.*

2. The Legislature did not intend to limit the act's applica-
tion to cases involving individual homeowners, like the ulti-
mate owners of single condominium units. The Legislature

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 51 Am Jur 2d, Licenses and Permits § 63 *et seq.*
[3–7] 73 Am Jur 2d, Statutes §§ 142 *et seq.,* 271 *et seq.*
[6] 16 Am Jur 2d, Constitutional Law § 494 *et seq.*
[7] 73 Am Jur 2d, Statutes §§ 267, 268.

defined the "person" who might undertake to become a home-owner to include various kinds of business organizations which obviously are not individuals building homes for themselves. Builders must be licensed to collect compensation for the construction of combination residential and commercial struc̀tures and the owners of such structures are often not individuals. Any "person" is authorized to file a complaint with the building commission against a builder for violations of the act. This power as defined is not limited to individual homeowners. The language of the statute that prohibits the unlicensed builder from initiating or continuing "any action in any court of this state" is all-inclusive. Owners of entire developments like the defendants are also protected by the act.

3. The residential builders licensing act addresses itself to the protection of various kinds of homeowners, including business entities, which are ordinarily the only ones financially able to develop multi-unit residential projects and the only ones in a position to insure compliance with the act. The ultimate purchaser of a condominium needs the protection as much as or more than the owner of a separate dwelling unit, but has little or no contact with builders like the plaintiff and as a result is not in a position to protect himself.

4. The Legislature could have reasonably concluded that whenever residential structures are involved—be they apartments, condominiums, or houses—special regulation is necessary regardless of the status of the owner. The "home owners" here sought to be protected are not simply the individual owners of separate dwelling structures, but statutorily comprehend, as well, the owners of today's condominium developments and combined residential and commercial structures.

5. The wisdom of prohibiting legal action as a penalty for failing to obtain a residential builders license is a matter for legislative rather than judicial consideration. Despite the fact that the Supreme Court has directed the attention of the Legislature to cases in which enforcement of the prohibition seemed to do more harm than good, the prohibition provision of the statute has not been amended.

Affirmed.

1. LICENSES—RESIDENTIAL BUILDERS—STATUTES—CLASSIFICATION.

The residential builders licensing act defines a class of plaintiffs—residential builders—and prohibits them from bringing or maintaining any action in any court of this state for compensation for building a residential structure unless they have a residential builders license; the act does not set up classes of

defendants, some of whom are protected and some of whom are not (MCL 338.1516; MSA 18.86[116]).

2. LICENSES—RESIDENTIAL BUILDERS—POWER TO SUE.

The statutory prohibition against any action by an unlicensed residential builder is not described as a defense that may only be asserted in certain situations; it is a penalty that divests the unlicensed residential builder of the right to sue (MCL 338.1516; MSA 18.86[116]).

3. LICENSES—RESIDENTIAL BUILDERS—STATUTES—LEGISLATIVE INTENT.

The Legislature did not intend to limit the protection of the residential builders licensing act to individual homeowners, but intended owners of entire residential developments to be protected by the act by all-inclusive language which says that residential builders must be licensed to initiate or continue any action in any court of this state for the purpose of collecting compensation for building a residential structure (MCL 338.1516; MSA 18.86[116]).

4. LICENSES—RESIDENTIAL BUILDERS—STATUTES—WORDS AND PHRASES
   —HOMEOWNERS.

The Legislature could have reasonably concluded that whenever residential structures are involved—be they apartments, condominiums, or houses—special regulation is necessary regardless of the status of the owner; the "home owners" sought to be protected by the residential builders licensing act are not simply the individual owners of separate dwelling structures, but statutorily comprehend, as well, the owners of today's condominium developments and combined residential and commercial structures (MCL 338.1516; MSA 18.86[116]).

5. LICENSES—RESIDENTIAL BUILDERS—STATUTES—CLASSIFICATION.

The Legislature could have reasonably concluded that whenever residential structures are involved—be they apartments, condominiums, or houses—special regulation is necessary regardless of the status of the owner (MCL 338.1501 *et seq.;* MSA 18.86[101] *et seq.).*

6. LICENSES—RESIDENTIAL BUILDERS—STATUTES—COURTS.

The wisdom of a statute is a matter for legislative rather than judicial consideration; it is not within the authority of the Supreme Court to amend the statute which prohibits legal action as a penalty on a residential builder for failing to obtain a residential builders license where the Court has directed the attention of the Legislature to cases in which the enforcement

of the prohibition seemed to do more harm than good and the prohibition provision of the statute has not been amended (MCL 338.1516; MSA 18.86[116]).

*Abood, Abood & Abood, P. C.* (by *William E. Rheaume)* for plaintiff.

*Richard H. Scholl* for defendants Property Development Group, Inc., and Ralph T. Bergsma.

*Robert E. Butcher* for defendants Cedar Cove, Metafor, Inc., Klurstein, Butcher, R.B.A. Properties, and Butcher & Associates, Inc.

*Simpson & Moran* (by *James A. Simpson* and *Louis J. Burnett)* for defendants Northern States Mortgage & Realty Investors and Kelly Mortgage & Investment Company.

Coleman, J. Charles Featherly Construction Company (Featherly) built some condominiums for which it claims not to have been fully paid. Defendants own or participated in the financing of the entire condominium development which includes those units built by the plaintiff. The circuit court dismissed the lawsuit against defendants with prejudice primarily because the plaintiff had not complied with the residential builders licensing act.[1] The Court of Appeals affirmed.

The dispositive question[2] is whether plaintiff was a residential builder required to have a residential builders license in order to maintain an action for compensation for construction of the condominiums.[3]

We affirm the Court of Appeals.

---

[1] MCLA 338.1501 *et seq.;* MSA 18.86(101) *et seq.*

[2] It is not necessary to pursue the other questions raised by plaintiff.

[3] MCLA 338.1501; MSA 18.86(101).

I

Section 1 of the residential builders licensing act says:

"In order to safeguard and protect home owners and persons undertaking to become home owners, it shall be unlawful * * * for any person to engage in the business of or to act in the capacity of a residential builder * * * without having a license therefor * * * ."

Section 2(b) of the act defines a residential builder as one "engaged in the construction of residential structures or a combination of residential and commercial structures".[4] Section 2(f) defines a residential structure as "premises used or intended to be used for residence purposes".[5]

The act's most important sanction is in § 16, which mandates, *inter alia:*

"No person engaged in the business or acting in the capacity of a residential builder * * * may bring or maintain any action in any court of this state for the collection of compensation for the performance of any act or contract for which a license is required by this act without alleging and proving that he was duly licensed under this act at all time during the performance of such act or contract * * * ."[6]

The circuit court relied primarily upon this section of the act as a basis for dismissing the lawsuit.

Featherly's principal contention is that the licensing act was designed to protect individual homeowners, not owners of whole developments like the defendants. Therefore, it argues that § 16's

[4] MCLA 338.1502(b); MSA 18.86(102)(b).

[5] MCLA 338.1502(f); MSA 18.86(102)(f).

[6] MCLA 338.1516; MSA 18.86(116).

prohibition against legal action should not be enforced in this particular case.

This argument reverses the orientation of the act and thus renders the argument suspect. The act does not set up classes of defendants, some of whom are protected and some of whom are not. The act defines a class of plaintiffs—residential builders—and prohibits them from bringing or maintaining "any action in any court of this state" unless they have a residential builders license. The prohibition is not described as a defense that may only be asserted in certain situations. It is a penalty that divests the unlicensed builder of the power to sue. Also, the only stated exceptions to this prohibition are defined in terms of builders who fall outside the class of builders which the act seeks to regulate.[7] The act does not treat the status of the defendant as an important consideration.

Nevertheless, the plaintiff urges us to engraft an exception onto § 16's prohibition based on the defendants' status. Featherly argues that the introductory phrase in § 1, "[i]n order to safeguard and protect home owners and persons undertaking to become home owners," supports such an exception. We are asked to read the term "home owner" as meaning individual homeowner, and then use this new term as the basis for an implied exception to § 16.

Without passing upon the merits of the act, we believe the Legislature did not intend such a result. The Legislature defined the "person" who might undertake to become a homeowner as "an individual, firm, partnership, association, copartnership, corporation, common law trust, or other

---

[7] *See,* for example, MCLA 338.1502(b); MSA 18.86(102)(b) and MCLA 338.1503; MSA 18.86(103).

organization or a combination thereof".[8] Many of these entities obviously are not individuals building homes for themselves.

The Legislature said builders must be licensed to collect compensation for the construction of combination residential and commercial structures.[9] Such structures obviously are not individual, separate dwellings and their owners are often not individuals.

The Legislature said any "person" is authorized to file a complaint with the building commission against a builder for violations of the act.[10] This power is not limited to individual homeowners.

Most importantly, the Legislature said that an unlicensed builder who builds a residential structure is prohibited from initiating or continuing "any action in any court of this state" for the purpose of collecting compensation for the construction of that structure.[11] This language is all-inclusive.

Today, one cannot seriously argue that the ultimate purchaser of a condominium is not a homeowner. The high and rising cost of separate single family dwellings and the unavailability of reasonable maintenance services for their upkeep have led progressively more people to buy condominiums as their homes. As homeowners, they need the act's protection as much as or more than the owner of a separate dwelling structure. However, the ultimate purchasers of condominium units have little or no contact with builders like the plaintiff and as a result are not in a position to protect themselves.

Plaintiff would have us rule that only the ulti-

---

[8] MCLA 338.1502(a); MSA 18.86(102)(a).

[9] MCLA 338.1502(b); MSA 18.86(102)(b).

[10] MCLA 338.1509(1); MSA 18.86(109)(1).

[11] MCLA 338.1516; MSA 18.86(116).

mate purchaser may avoid legal action pursuant to § 16's prohibition. The act, however, addresses itself to the protection of various kinds of homeowners, including business entities which are ordinarily the only ones financially able to develop multiunit residential projects and the only ones in a position to insure compliance with the act.

We believe the Legislature intended owners of entire residential developments, like the defendants, to be protected by the act.

## II

The cases cited by the plaintiff do not aid its contention that an exception should be read into § 16 to permit this particular lawsuit.

In *Tracer v Bushre,* 381 Mich 282; 160 NW2d 898 (1968), this Court rejected a constitutional challenge to the validity of the residential builders licensing act. In doing so, the Court said the Legislature could treat builders of residential structures or combination residential and commercial structures differently from builders of purely commercial structures. In support of this conclusion, the Court said the act was essentially a consumer protection measure and indicated that the Legislature could reasonably conclude that consumers as a group needed more protection than owners of commercial structures. However, the Court also indicated that the act applied to situations not involving an individual homeowner. The Court specifically cited *Alexander v Neal,* 364 Mich 485; 110 NW2d 797 (1961), as an example.

In *Neal,* this Court was asked to interpret the forerunner of the present licensing act.[12] The pertinent language in the two acts is substantially the

[12] 1953 PA 208 (MCLA 338.971, *et seq.;* MSA 18.86(1), *et seq.).*

same. The plaintiff in *Neal* did not have a residential builders license. He installed a new roof on the defendants' 31 unit combination apartment and commercial building. When he sued the defendants to collect for the roof, the circuit court dismissed the suit because of the prohibition against legal action in the act. On appeal the plaintiff argued that the act should not prohibit lawsuits against "absentee landlords [of] commercial investment property". The Court unanimously rejected that argument, concluding the opinion by saying:

"It is clear * * * that the 'homeowners' here sought to be protected are not simply the owners of the traditional vine-covered cottages, but comprehend, as well, the owners of today's combined residential and commercial structures."

The Court in *Tracer v Bushre, supra,* did not explain why, if the act could treat residential builders differently because the act was a consumer protection measure, the act could validly treat builders of combined residential and commercial structures like the one in *Neal* differently as well. One explanation is that the Legislature could have reasonably concluded that whenever residential structures are involved—be they apartments, condominiums or houses—special regulation is necessary regardless of the status of the owner.

*Neal* supports our conclusion in the case at bar. We note that in 1965, when the Legislature enacted the present version of the licensing act, it left the *Neal* conclusion intact.

One other case must be mentioned. In *Reynolds v College Park Corp,* 63 Mich App 325; 234 NW2d 507 (1975), the Court of Appeals said that an unlicensed plaintiff could sue the developer of a

mobile home development for the value of the labor and services the plaintiff contributed to the development's construction. However, the plaintiff was a former director and shareholder of the defendant and the defendant was the entity that was required to have a builders license. That is why the plaintiff's lawsuit was not prohibited. These special facts are not present in the case at bar.

### III

Section 16's prohibition against legal action may be a harsh penalty to impose for failing to obtain a residential builders license. The ease with which the requirements for obtaining a license can be met casts doubt on the wisdom of this sanction.[13] However, the wisdom of a statute is a matter for legislative rather than judicial consideration. Despite the fact that we have directed the attention of the Legislature to cases in which the enforcement of § 16's prohibition seemed to do more harm than good, the prohibition has not been amended.[14]

The Court of Appeals is affirmed. No costs, a public question.

KAVANAGH, C. J., and WILLIAMS, LEVIN, FITZGERALD, RYAN, and BLAIR MOODY, JR., JJ., concurred with COLEMAN, J.

---

[13] *See* MCLA 338.1504; MSA 18.86(104).

[14] *See Bilt-More Homes, Inc v French,* 373 Mich 693; 130 NW2d 907 (1964).