WANDA S. THISTLE, Appellant, v JOSEPH G. ENGLERT, Respondent.

Fourth Department, September 21, 1984

**APPEARANCES OF COUNSEL**

*Harris, Maloney, Horwitz, Evans & Fox (Richard J. Horwitz* and *Melvin L. Olver* of counsel), for appellant.

*John A. R. Walsh, P. C.,* for respondent.

**OPINION OF THE COURT**

SCHNEPP, J.

The sole issue raised on this appeal is whether the failure of the operator of an automobile repair shop to register his business under article 12-A of the Vehicle and Traffic Law precludes recovery either in contract or *quantum meruit* for services performed and bars the assertion of a garageman's lien for such work.

In March, 1980 plaintiff delivered her 1964 Chevrolet Corvette to the defendant for certain modifications and repairs. In December, 1982 she commenced this action to recover possession of the vehicle and damages. Defendant, the owner and operator of Englert's Welding and Metal Fabricating, counterclaimed for $6,162.30 alleged to be due to him for the services he rendered in the repair of the

vehicle and he also sought to foreclose his alleged garageman's lien. While conceding the existence of issues of fact as to the nature and value of the alleged services and whether the repairs were authorized or actually performed, plaintiff nevertheless moved to dismiss the counterclaim and for partial summary judgment awarding her possession of the vehicle. She seeks to justify this relief upon the ground that the claim is unenforceable because defendant is not registered under article 12-A of the Vehicle and Traffic Law and thus may not recover for his services or foreclose on his claimed garageman's lien. In our view, Special Term correctly denied plaintiff's motion.

There is no doubt that defendant is subject to and has failed to comply with the registration provisions of the act. Article 12-A of the Vehicle and Traffic Law, entitled the "Motor Vehicle Repair Shop Registration Act", provides that no person who, for compensation, is wholly or partially engaged in the business of repairing motor vehicles shall operate a motor vehicle repair shop unless his business is currently registered in accordance with the provisions of the article (Vehicle and Traffic Law, § 398-b, subd 2; § 398-c, subds 1, 2). The proof establishes that the defendant was engaged in the business of repairing motor vehicles and he admits in his answer that he operated an unregistered motor vehicle repair shop.

Thus, we must consider whether under these circumstances the unregistered defendant may enforce his contract and recover for his services. It has been held that an agreement to render services by one who is not licensed or registered, although required to be by statute, renders the contract illegal and unenforceable, even though fully performed (*Johnston v Dahlgren,* 166 NY 354, 358; see 12 NY Jur 2d, Businesses and Occupations, § 43, p 493).* As a

---

* Defendant's argument that the act merely requires "registration" and should be distinguished from statutes requiring "licenses" because no minimum level of skill is required to obtain registration is clearly contrary to the plain meaning of the act. The Legislature expressly intended the registration requirement to serve as a means "to set standards for quality repairs" and to eliminate unqualified automotive repair shops from engaging in the business (Vehicle and Traffic Law, § 398-a). In keeping with this stated purpose the granting of registration is not simply a ministerial act to be had for the asking. The Legislature conferred on the Commissioner of Motor Vehicles discretion to examine applicants for registration (Vehicle and Traffic Law, § 398-c, subd 2) and to refuse registration if he determined an applicant "has failed to furnish satisfactory evidence of good character, reputation and fitness" (Vehicle and Traffic Law, § 398-e, subd 1, par [d]).

general rule, however, the purpose of the Legislature in enacting a licensing statute controls in arriving at a determination of this issue. " 'Legislative intent remains the touchstone' for determining the effect of violation of a particular statute" (*Unger v Travel Arrangements*, 25 AD2d 40, 44). Our task, therefore, is to ascertain whether the Legislature intended to require forfeiture of contractual rights as a means to further the purposes of the repair shop registration act. In our analysis we must first look at the statute, and if it has a regulatory purpose to protect the public against fraud and incompetence, the conclusion that the Legislature intended to penalize the statute breaker by denying him enforcement of his contracts is "much more likely" (see 6A Corbin, Contracts, § 1512, pp 711-712). This conclusion is tenable, however, only if the public interest in the enforcement of contracts is clearly outweighed by the public policy behind the regulation (see Restatement, Contracts 2d, § 181). "If the statute does not provide expressly that its violation will deprive the parties of their right to sue on the contract, and the denial of relief is wholly out of proportion to the requirements of public policy or appropriate individual punishment, the right to recover will not be denied." (*Rosasco Creameries v Cohen*, 276 NY 274, 278.) Accordingly, after determining the purpose of the legislation, the court must strike an appropriate balance which furthers the goals established by the Legislature without causing disproportionate and unintended hardship to the unregistered defendant. On the one hand, " 'the courts should not lend their aid to the enforcement of contracts where performance would tend to deprive the public of the benefits of the regulatory measures' " (15 Williston, Contracts [3d ed], § 1765, p 247). On the other hand, where the Legislature has included sanctions in the statute, the added penalty of nonenforceability of contracts should be avoided when it causes great and disproportionate hardship (6A Corbin, Contracts, § 1512, p 714).

The purpose of the Motor Vehicle Repair Shop Registration Act is clearly regulatory. Section 398-a of the Vehicle and Traffic Law declares the purposes of the act to include the furtherance of highway safety by promoting proper and efficient repair of motor vehicles, the protection of consumers from dishonest, deceptive and fraudulent practices, the

elimination from business of persons who engage in dishonest or fraudulent practices, and the setting of standards for quality repairs. A fair reading of that section compels the conclusion that the primary legislative intent was to promote safety and to protect consumers by regulating the fitness of repair shops (see *Matter of Tobey v Melton,* 74 AD2d 708, 709). This finding, however, does not mandate forfeiture.

We are now required to examine the statute in greater detail in order to determine whether the Legislature intended to require forfeiture as a means to effectuate its regulatory purpose. In the first place, the act itself is silent on the matter of the enforceability of contracts and does not expressly mandate forfeiture (cf. Real Property Law, § 442-d; General Business Law, § 186, subd 1). Next, there is no doubt that the Legislature considered registration, not forfeiture, to be the linchpin of the entire regulatory scheme. Once a repair shop is registered the Commissioner has broad powers to investigate the quality of repairs, to regulate against fraudulent and deceptive practices (Vehicle and Traffic Law, § 398-g) and to assess civil penalties, including fines and restitution (Vehicle and Traffic Law, § 398-e, subd 2). Registration is so important to the Legislature's purpose that the Legislature conferred on the Commissioner and the Attorney-General authority to apply for injunctive relief to put unregistered repair shops out of business. Pursuant to subdivision 1 of section 398-c the Commissioner may request that the Attorney-General commence an action to enjoin the operation of any repair shop operating in violation of the registration requirements.

As an alternative to the drastic remedy of injunction, the Commissioner has the authority administratively to hear and determine charges of unregistered operation and to assess a civil penalty of $1,000, all but $50 of which may be avoided if the repair shop is registered within 10 days (Vehicle and Traffic Law, § 398-i, subds 1, 2). The fact that the Legislature chose to impose only a civil penalty instead of criminal sanctions and to establish a minimum fine of just $50 is indicative of a legislative intent that in the first instance repair shops should not be severely punished for

not registering. Obviously, the Legislature intended that repair shops should register and become subject to the regulatory regime established by the act. The Legislature sought to accomplish this purpose with a nuisance penalty backed up with the *threat* of more severe punishment, including increased fines and injunction.

In sum, the thrust of the legislation is to encourage the registration of motor vehicle repair shops and to make them subject to the authority of the Commissioner and the sanctions of the statute; this was deemed sufficient to protect the public. Moreover, the minor punishment of a $50 civil penalty distinguishes article 12-A from other licensing or registration statutes where the Legislature has imposed greater penalties giving the offense of not registering a more serious character. More often than not, where the Legislature has signaled that not registering, in and of itself, is a serious offense, the courts have subsequently implied a legislative intent to deny enforcement of contracts as necessary to further the goal of the legislation. This is particularly true where failure to register is punishable as a criminal offense (see, e.g., the statutes underlying the following cases: *Johnston v Dahlgren,* 166 NY 354, *supra; Richards Conditioning Corp. v Oleet,* 21 NY2d 895; *Segrete v Zimmerman,* 67 AD2d 999; *Atkin v Hill, Darlington & Grimm,* 15 AD2d 362, affd 12 NY2d 940; *Vegliack v Mazzella,* 73 Misc 2d 90), and also where there is a sizable civil penalty (see *East Coast Moving & Stor. v Flappin,* 78 Misc 2d 140). Present in such statutes, but absent from article 12-A, is an indication from the Legislature that unlicensed persons pose such a significant threat to the public that they should immediately be put out of business.

That the Legislature did not intend to require the forfeiture of contractual rights under article 12-A may also be implied from the fact that only the Attorney-General is authorized to seek injunctive relief to put unregistered repair shops out of business (Vehicle and Traffic Law, § 398-c, subd 1). There is no provision for a private cause of action for injunctive relief based on the failure to register. Since unenforceability is in many respects tantamount to an injunction against doing business, the limitation of the

right to seek injunctive relief suggests a legislative intent that failure to register, in and of itself, will not preclude recovery for services rendered.

Adding the penalty of forfeiture of contractual rights to the sanctions imposed by the Legislature would be inconsistent with the intent of that body to delegate authority only to the Commissioner and the Attorney-General to deal with unregistered repair shops. Moreover, in light of the *de minimis* $50 penalty for failure to register, the added civil penalty of forfeiture would be unduly harsh and disproportionate and unnecessary to further the goals of the legislation; i.e., the registration of motor vehicle repair shops. We conclude that to penalize the owners of unregistered repair shops by barring them from recovery for their services does not further the purposes of the act and we find no implication of a legislative intent which would require the courts to impose this additional penalty.

Accordingly, defendant's operation of an unregistered motor vehicle repair shop does not preclude recovery for the services he performed in connection with the repair of plaintiff's motor vehicle and since the underlying claim is enforceable he may assert a garageman's lien against the motor vehicle. The order of Special Term should be affirmed.

DILLON, P. J., DOERR, GREEN and MOULE, JJ., concur.

Order unanimously affirmed with costs.