SHOREHAM-WADING RIVER CENTRAL SCHOOL DISTRICT, Appellant-Respondent, v TOWN OF BROOKHAVEN et al., Respondents-Appellants. (Action No. 1.)

In the Matter of RITA RECH et al., Respondents, v HENRIETTA ACAMPORA, as Supervisor of Town of Brookhaven, et al., Appellants. (Action No. 2.)

Second Department, March 11, 1985

### APPEARANCES OF COUNSEL

*Lou Lewis* and *Jode Susan Millman* for appellant-respondent.

*Allen I. Sak, Town Attorney* (*Howard M. Bergson* of counsel), for respondents-appellants.

*Block & Hamburger* (*Frederic Block* of counsel), for respondents.

### OPINION OF THE COURT

Per Curiam.

These consolidated appeals are from two judgments of Special Term construing Suffolk County Tax Act (SCTA) §§ 13 and 14

which govern the distribution of property tax moneys between the Town of Brookhaven and the school districts located within that town. In practical terms, we are asked to decide whether, under the SCTA, a shortage of real property tax revenues which is caused by a default in payment of taxes should be borne entirely by the school district in which the defaulting party's real property is situated, or whether such a shortage of moneys should be apportioned among all the school districts within the particular town. Special Term concluded that the full revenue shortage should be completely borne by the school district within which the defaulting taxpayer's real property is located. We come to a contrary determination and hold that the SCTA requires a fair apportionment of the shortage among all the school districts. Accordingly, we modify the judgments appealed from.

The facts upon which this controversy comes before us are relatively uncomplicated. The Long Island Lighting Company (LILCO) refused to pay its 1983-1984 property tax bill of some $52,000,000 assessed against its Shoreham Nuclear Power Generating Station which is situated entirely within the Shoreham-Wading River Central School District (Shoreham-Wading River). The Shoreham-Wading River District fixed its 1983-1984 tax levy, pursuant to SCTA § 8, at approximately $21,000,000. This figure was submitted to the County of Suffolk along with the tax levies of all the other school districts within the Town of Brookhaven, and on December 13, 1984, the county delivered a tax warrant to the town's receiver of taxes (F. Daniel Moloney). The receiver then collected the taxes, and with the help of the Town Supervisor (Henrietta Acampora), allocated these revenues between the school districts as a group and the various other town expenses. The Town Supervisor distributed the school districts' portion of the tax moneys among the several school districts in a ratio proportional to each school's individual tax levy. By petitions dated February 13, 1984, and April 30, 1984, respectively, William Floyd Union Free School District (William Floyd) and Shoreham-Wading River challenged the propriety of these distributions and requested, *inter alia,* declaratory judgments as to the meaning of SCTA §§ 13 and 14. These provisions, insofar as they are relevant, read as follows:

"Sec. 13 (a) TAX ROLL AND RECEIVER'S WARRANT. On or before the first day of December in each year or such date as may be designated by a resolution of the County Legislature, the County Legislature of the county shall cause to be annexed to the tax and assessment roll of each town a warrant under the seal of the county, signed by the presiding officer and clerk of the

board, commanding the receiver of taxes of the town to whom the same shall be directed, to collect from the several persons and on the property named and described in the tax and assessment roll the several sums extended therein as taxes and assessments against the respective names and property, except taxes upon the shares of stock of banks and banking associations and further commanding him to pay over from time to time all moneys so collected, as follows:

"1. Within fifteen days after the delivery of the warrant to the supervisor of the town, in trust for the school districts therein, one-half of the amount of the tax levied for the purposes of the school districts of the town, or such part thereof as shall not, in the aggregate, exceed one-half of the total amount collected by said date.

"2. Within thirty days after such delivery, to the supervisor of the town, in trust for the school districts therein, the balance of the amount of the tax levied for the purposes of said school districts or such part thereof as shall not in the aggregate exceed one-half of the total amount collected by said date.

"3. Within the said first period of fifteen days and thereafter within the said second period of fifteen days, the remainder of the moneys then collected to the supervisor of the town on account of the moneys levied therein for the support of the highways and bridges, moneys to be expended by welfare officials for the support of needy persons, and moneys to defray any other town expenses or charges.

"4. After thirty days from the date of the delivery of the warrant, and at the expiration of each period of ten days thereafter, on account of the foregoing, to the officers above named, in proportion to the balance remaining unpaid, all moneys so collected until such balances are paid in full ' * * *

"Sec. 14. DISPOSITION OF SCHOOL MONEYS. Within three days after the receipt by the supervisor of the several amounts above directed to be paid to him in trust for the school districts the supervisor shall divide and pay over the same to the treasurer or other fiscal officer of the several school districts of the town in proportion to the several totals required by and raised for each district without compensation" (*see,* L 1920, ch 311, as amended).

The petitions challenging the Town of Brookhaven's compliance with the above provisions were consolidated by Special Term into a single declaratory judgment action.

Special Term essentially interpreted SCTA § 13 (a) (1) through (4) as requiring the Town of Brookhaven and its offi-

cials, within the first and second 15-day periods following delivery of the tax warrant, to allocate and distribute to the school districts one half of all tax proceeds collected and to allocate the remaining one half to other town expenses, and at 10-day intervals thereafter to distribute tax moneys between the school districts and the town in proportion to the balances still due to each. Special Term then construed section 14 to mean that the Town of Brookhaven and its officials were required to distribute and pay over the tax moneys to the individual school districts in proportion to the several amounts actually collected within each school district, such that if no taxes were collected within a certain school district, that district would then receive no distribution of tax revenues. This interpretation apparently stems from the court's finding that the word "raised", as used in the phrase in SCTA § 14, "in proportion to the several totals required by and raised for each district", is actually synonymous with the word "collected".

In reviewing these constructions, we note at the outset that this matter is truly one of first impression. Neither our own careful research nor that of the parties has disclosed any law or administrative opinions dealing with the precise issues before us. Nevertheless, we fully agree with Special Term's interpretation of section 13 (a) (1) through (4). The provisions are, in our view, clear and unambiguous on their face. The gist of section 13 (a) (1) is that the town's receiver of taxes must, within 15 days after the delivery of the warrant, allocate to the school districts one half of the amount of their levies, *but such amount is not to exceed one half of the total revenues collected as of that date.* Likewise, section 13 (a) (2) requires that the same procedure be followed for the second 15-day period following the tax warrant's delivery. Section 13 (a) (3) merely requires that, during the 30 days encompassed by (1) and (2), those moneys not allocated to the school districts are to be allocated to the Town Supervisor to cover other town expenses. The language of section 13 (a) (4) is also sufficiently clear to permit a "plain meaning" interpretation. That section provides that after the initial 30-day period, all moneys collected by the receiver of taxes are to be distributed, at 10-day intervals, between the school districts and the town "in proportion to the balance remaining unpaid * * * until such balances are paid in full". This simply mandates that after the first 30 days have elapsed, the tax revenues are to be allocated in proportion to the outstanding balances of the school districts' and the town's respective total tax levies.

We therefore find no fault with the court's interpretation of any of the aforementioned provisions of section 13. Indeed, we

view the language of the section as being so clear and unambiguous as to permit of no reasonable construction other than that reached by Special Term. Statutory language is generally to be construed in accordance with its plain and obvious sense, and the meaning attached to it should be neither strained nor artificial (*see, Civil Serv. Employees Assn. v County of Oneida,* 78 AD2d 1004; McKinney's Cons Laws of NY, Book 1, Statutes § 94). Therefore, we reject out of hand any contention which advocates a different construction of section 13.

Unfortunately, the meaning of SCTA § 14 is not so readily ascertainable. As noted previously, Special Term, through its equating of the term "raised" with the word "collected", construed section 14 to mean that if no tax moneys were collected from a particular school district due to a tax default, then that district would not be entitled to receive any distribution of revenues. This construction is also urged upon us by William Floyd. Conversely, Shoreham-Wading River maintains that the term "raised" is actually synonymous with the word "levied", so that even if a school district's property owners default on their tax obligations, that district can still share in the revenues collected from other districts in a proportion based upon its own tax levy in relation to the total levy for all the school districts. Unlike Special Term, we adopt the latter interpretation.

The absence of any provision in the SCTA specifically dealing with the treatment of revenue shortages leads us to conclude that this problem was never anticipated when the provisions in question were enacted. While all of the school districts are guaranteed eventual payment of their levies in full, the statute is silent as to which district or districts must bear the burden of the interim financing occasioned by a tax default. However, we attribute great significance to the fact that in past years, the public officials of the Town of Brookhaven have interpreted the SCTA in such a way that the town's practice has been to apportion such temporary revenue shortages among all the school districts in proportion to each district's levy. This appears to have been an effective stop-gap measure until full financing for each school district could be obtained from the county. Special Term dismissed this "historical precedent" argument as being inapplicable where, as here, the default is of great magnitude. However, we fail to see why the size of the tax default should have any bearing upon the manner in which the resulting revenue shortage is to be allocated. Nothing in the SCTA requires that a default must be borne solely by the school district in which the defaulting party's real property is situated. Moreover, it is a fact that all the school districts (including

William Floyd) have in the past acquiesced in this practice of apportioning revenue shortages. The contention that it should now be abandoned merely because a default of great magnitude has occurred is unpersuasive. Furthermore, to acquiesce in one rule for minor revenue shortages and then to advocate another rule when the shortage is very large (as William Floyd does here) strikes us as an inconsistent and confusing position.

When a legislative enactment is susceptible to more than one reasonable interpretation, the practical meaning attached to it by the parties whom it affects, when acquiesced in over an extended period of time, is highly persuasive (*see, Matter of City of New York [Willard Parker Hosp.]*, 217 NY 1; *Matter of 6 E. 112th St. Corp. v State Tax Commn.*, 8 AD2d 542, *affd* 8 NY2d 930; McKinney's Cons Laws of NY, Book 1, Statutes § 128). We see no reason to break the pattern of apportionment which, in the past, has been concurred in by all the parties. Moreover, the manner in which the town's officials have historically administered section 14 is of great import. Unless manifestly wrong, the meaning which public officials attach to an act which they are responsible for administering is to be accorded great weight in construing the law (*see, People v Newman*, 32 NY2d 379, *cert denied* 414 US 1163; *Matter of Holy Spirit Assn. for Unification of World Christianity v Rosenfeld*, 91 AD2d 190, *lv denied* 63 NY2d 603).

William Floyd contends that such an interpretation of section 14 is inequitable in that it deprives those school districts whose taxpayers fully and promptly pay their taxes from receiving the full amount of tax moneys due to them. This contention totally ignores the gross inequity which would result if such a huge tax default as exists here were visited upon a single school district such as Shoreham-Wading River. Legislative enactments of the type involved here do not permit individual school districts to collect taxes within their borders and thus substantially impair the power of the districts to directly enforce the payment of taxes by property owners (*see, Union Free School Dist. No. 3 v Town of Rye*, 280 NY 469; *Union Free School Dist. No. 11 v County of Steuben*, 178 Misc 415, *affd* 264 App Div 945). Likewise, the facts of this case clearly establish that Shoreham-Wading River exercises no control over LILCO and cannot directly force it to pay its tax bill. Under such circumstances, the denial of the school district's fair share of tax moneys would be tantamount to penalizing it for a tax default over which it had no control and for which it was in no way responsible.

We further observe that apportionment of shortages is a fair practice in that it operates as a two-way street. Thus, if William

Floyd were to suffer a tax default within its borders at some point in the future, it would be the revenues collected from Shoreham-Wading River and the other school districts which would help William Floyd to meet its financial obligations until full payment was obtained. We therefore find that since this practice inures to the mutual benefit of all the school districts, apportionment of revenue shortages is both equitable and desirable. This system of apportionment fully comports with the language of SCTA § 14. The phrase "required by and raised for each district" is in our view a reference to the amount of each district's levy and not to the amount of moneys actually collected within each district. If, as William Floyd contends, this phrase means that a school district can only receive that percentage of the total which its own taxpayers have contributed, then it should logically read "required by and raised *from* each district". Since this is not the case, we hold that section 14 requires that, within three days after the receipt by the Town Supervisor of the several amounts directed to be paid to her or in trust for the school districts under section 13 (a) (1) through (4), she shall pay the same to the treasurer or other fiscal officer of each school district of the town in proportion to the amount required by and levied by each school district; thus, the trust moneys are to be distributed among the several districts in the proportion which each individual district's levy bears to the collective levy of all the school districts combined. We modify the judgments of Special Term accordingly.

TITONE, J. P., MANGANO, THOMPSON and RUBIN, JJ., concur.

Judgment of the Supreme Court, Suffolk County, entered January 23, 1985, modified, on the law, by deleting the third decretal paragraph thereof and substituting therefor a provision declaring that Suffolk County Tax Act § 14 requires that, within three days after the receipt by the Brookhaven Town Supervisor of the several amounts directed to be paid to her or in trust for the school districts under Suffolk County Tax Act § 13 (a) (1) through (4), she shall pay the same to the treasurer or other fiscal officer of each school district of the Town of Brookhaven in proportion to the amount required by and levied by each school district. As so modified, judgment affirmed insofar as appealed from, without costs or disbursements.

Judgment of the same court, entered January 29, 1985, modified, on the law, by deleting the fifth and seventh decretal paragraphs thereof and substituting therefor a provision declaring that Suffolk County Tax Act § 14 requires that within three days after receipt by the Brookhaven Town Supervisor of the

several amounts directed to be paid to her or in trust for the school districts under Suffolk County Tax Act § 13 (a) (1) through (4), she shall pay the same to the treasurer or other fiscal officer of each school district of the Town of Brookhaven in proportion to the amount required by and levied by each school district. As so modified, judgment affirmed insofar as appealed from, without costs or disbursements.