■ LORENZO TODISCO, Appellant, v STEVE ECONOPOULY, Respondent.—In an action to recover the balance due on a contract, the plaintiff appeals from an order of the Supreme Court, Nassau County (Becker, J.), dated May 25, 1988, which, inter alia, granted the defendant's motion for summary judgment dismissing the complaint.

Ordered that the order is affirmed, without costs or disbursements.

The plaintiff sued to recover the balance due under a contract with the defendant pursuant to which he performed certain home improvements to the defendant's residence. At the time he performed such services, the plaintiff was not licensed, in violation of Nassau County Administrative Code § 21-11.2. However, the plaintiff was licensed at the time of the commencement of this action. While conceding that under case law preexisting the enactment of CPLR 3015 (e) in 1983, he would be precluded from recovering the unpaid balance on the contract (see, e.g., Richards Conditioning Corp. v Oleet, 21 NY2d 895; Millington v Rapoport, 98 AD2d 765; Segrete v Zimmerman, 67 AD2d 999), the plaintiff maintains that by enacting CPLR 3015 (e), the Legislature indicated its intention to permit retroactive licensing to validate contracts by unlicensed contractors.

We disagree and affirm the order of the Supreme Court granting the defendant's motion for summary judgment. CPLR 3015 (e) pertains to the particularity required for specific matters contained in pleadings and complaints and permits a plaintiff who does not have a license at the commencement of the action to amend the complaint to allege the existence of an after-acquired license. Although the legislative history of CPLR 3015 (e) is silent as to the effect of the after-acquired license proviso on contractors who are not licensed at the time the work is performed, nothing suggests that the Legislature intended to overturn the well-established body of law that requires a license at the time of performance (see, Zandell v Zerbe, 139 Misc 2d 737).

The purpose behind the enactment of CPLR 3015 (e) was not to weaken substantive consumer rights, but, rather, to shift the burden from the homeowner to the contractor to establish that the contractor was licensed and to encourage such businesses to become licensed (Zandell v Zerbe, supra). Local licensing provisions, such as that contained in the Nassau County Administrative Code, provide protection of the public health and safety (see, Richards Conditioning Corp. v Oleet, 21 NY2d 895, supra; Chosen Constr. Corp. v Syz, 138 AD2d 284; Mortise v 55 Liberty Owners Corp., 102 AD2d 719, affd 63 NY2d 743; Millington v Rapoport, 98 AD2d 765, supra).

In order for a home improvement contractor to recover damages for breach of contract under a quantum meruit theory, he must possess (1) a valid license at the time of performance for which he seeks compensation, and (2) a valid license at the time of pleading (Zandell v Zerbe, supra). Since the plaintiff was unlicensed at the time the work on the

defendant's residence was performed, the Supreme Court properly granted his motion for summary judgment. Thompson, J. P., Rubin and Sullivan, JJ., concur.

Rosenblatt, J., concurs in the result, with the following memorandum: I concur in the result, but I reach it by a different reasoning process, and would stress certain considerations that relate to CPLR 3015 (e). The statute, in clear terms, speaks of causes of action based on after-acquired licenses. By denying the motion for leave to amend the complaint, the Supreme Court concluded that the failure to have the license at the time of performance is an unconditional, legal bar to recovery, and that it is incurable, no matter what.

The court did not exercise its discretion in denying the motion, but premised its denial on its belief that the statute does not permit a plaintiff to allege an after-acquired license if the plaintiff did not have one at the time of performance. I believe, however, that CPLR 3015 (e) is amenable to the exercise of discretion, and that the motion to amend should have been decided on that basis. Because the ruling, however, does not amount to an improvident exercise of discretion, the order may be sustained and the result left undisturbed. I concur separately because I think it important to emphasize that there may be instances in which the exercise of discretion would call for a different result.

The statute "seems clear in its intention" to permit a plaintiff who had no license prior to suit to obtain it subsequently, and "to cure everything nunc pro tunc through an amendment" (Siegel, 1983 Supp Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR 3015, 1989 Pocket Part, at 7).

The majority recognizes that the statute contemplates after-acquired licenses, but implicitly interprets the legislation to cover only the highly unusual instances in which the plaintiff had a license at the time the goods or services were furnished, and that it thereafter lapsed. But that is not what the statute says. It contains no such restriction.

"Statutory language is generally to be construed in accordance with its plain and obvious sense, and the meaning attached to it should be neither strained nor artificial" *(Shoreham-Wading Riv. Cent. School Dist. v Town of Brookhaven,* 107 AD2d 219, 223; *see also, Matter of Pokoik v Department of Health Servs.,* 72 NY2d 708).

If the Legislature intended to restrict the statute to the

exotic realms of lapsed licenses only, it could easily have said so, but it did not. The majority's interpretation ascribes to the statute a legislative intent that may be perceived as weakening, rather than strengthening, the statute's ameliorative ends.

In order to assess the statute and its objectives, it is worth examining it in the context of the law relating to actions of this kind. In this State and elsewhere, the questions of whether and when an unlicensed artisan, contractor, purveyor, or seller should be able to recover for work, services, or sales, have not been answered uniformly.

Where the statute itself provides that the absence of a license at the time of performance precludes an action to recover, the courts have had little difficulty in enforcing the rule (e.g., *Bendell v De Dominicis*, 251 NY 305; *see*, with respect to recovery by contractors, *Wilderness Bldg. Sys. v Chapman*, 699 P2d 766, 767, n 2 [Utah]; *Featherly Constr. Co. v Property Dev. Group*, 400 Mich 198, 253 NW2d 643; *Williams v Joyner-Cranford-Burke Constr. Co.*, 285 Ark 134, 685 SW2d 503; *see generally*, 51 Am Jur 2d, Licenses and Permits, § 66; 45 NY Jur, Permits and Licenses, § 33).

Conversely, where an enactment expressly provides that a contract is not to be rendered invalid or unenforceable for failure to comply with a licensing requirement, a cause of action is tenable (*see*, Annotation, *Failure to Procure Occupational or Business License or Permit as Affecting Validity or Enforceability of Contract*, 30 ALR 834, 838; 42 ALR 1226; 118 ALR 646, 647; *see also*, Business Corporation Law § 1312 [b]).

It is where the statute or regulation is silent as to the contract's enforceability that courts have differed.

In deciding whether an unlicensed party may sue, courts have, in the absence of express legislative declarations, sought to determine whether the license requirement is designed for public protection, in which case recovery is generally barred (e.g., *Meridian Corp. v McGlynn/Garmaker Co.*, 567 P2d 1110 [Utah]; *Cooper v Johnston*, 283 Ala 565, 219 So 2d 392) or for purposes of revenue, in which case courts have often allowed the unlicensed parties to recover (*see*, *Galbreath-Ruffin Corp. v 40th & 3rd Corp.*, 19 NY2d 354; *see, e.g.*, with respect to recovery by contractors, *Mendolia v Zakrzewski*, 41 Del 354, 22 A2d 835; *Howard v Lebby*, 197 Ky 324, 246 SW 828; *Schloss v Davis*, 213 Md 119, 131 A2d 287; *Welles v Revercomb*, 189 Va 777, 54 SE2d 878; *see also*, Annotation, *Failure of Artisan or Construction Contractor to Procure Occupational or Business*

*License or Permit as Affecting Validity or Enforceability of Contract,* 82 ALR2d 1429; Annotation, *Procurement of Real-Estate Broker's License Subsequent to Execution of Contract for Services as Entitling Broker to Compensation For Services,* 80 ALR3d 318).

Some courts have allowed recoveries where there has been incomplete, but substantial compliance with the licensing requirements *(e.g., Jones v Short,* 696 P2d 665 [Alaska]; *E.C. Ernst, Inc. v County of Contra Costa,* 555 F Supp 122; *Gaines v Eastern Pac.,* 136 Cal App 3d 679, 186 Cal Rptr 421; *Meyer Drilling Co. v Phillips Co.,* 2 Wash App 600, 468 P2d 1008, *affd* 79 Wash 2d 431, 486 P2d 1071 [contractor licensed before and after work was performed]).

In New York we have a substantial body of law dealing with suits by unlicensed artisans, sellers, or suppliers, and the history of this issue illustrates that it is by no means one sided. *Richards Conditioning Corp. v Oleet* (21 NY2d 895), a case frequently invoked by defendants seeking to bar recovery, must be read in its factual and historical context.

In *Richards,* the Court of Appeals cited *Johnston v Dahlgren* (166 NY 354), in which it had earlier denied recovery to an unsanctioned plumbing contractor. Thirty-six years after *Johnston,* however, the Court of Appeals, in *Rosasco Creameries v Cohen* (276 NY 274), allowed recovery by an unlicensed milk seller. In distinguishing the two cases, the court said that the plumbing case dealt with public health (a primary basis for any licensing scheme), whereas the milk case did not. "Little danger to the public health is involved by the sale of milk by unlicensed dealers," the Court of Appeals said in 1937 *(Rosasco Creameries v Cohen, supra,* at 280). The distinction may be difficult to swallow, but the court, one suspects, was simply struggling to do what courts are expected to do: to prevent the injustice that would occur if a laborer or seller would be unfairly done out of an earned fee.

On the other hand, courts, in the absence of legislation, have concluded that one way to insure compliance with licensing requirements designed for public protection is to simply cut off the right to sue. In these decisions, the courts are inferring legislative intent by imposing a remedy for a seller's or contractor's failure to acquire a license before the goods or services are supplied: no license, no cause of action *(e.g., Bujas v Katz,* 133 AD2d 730; *Hammerman v Jamco Indus.,* 119 AD2d 544; *Mortise v 55 Liberty Owners Corp.,* 102 AD2d 719, *affd* 63 NY2d 743; *Triche v City of Houma,* 342 So 2d 1155 [La];

*Donmar Maryland Corp. v Hawkesworth,* 46 Md App 575, 420 A2d 295).

It is a stringent rule, but not without logic, and in the absence of a statute authorizing after-acquired licenses, is an arguably sensible way to promote compliance, particularly in the case of a discipline or practice that contemplates licensing for the most compelling public protection reasons, as, for example, in the practice of law *(El Gemayel v Seaman,* 72 NY2d 804; *see also, Charlebois v Weller Assocs.,* 72 NY2d 587). But I do not read the law as treating all licensing schemes alike, regardless of their goals or the class of people or activities that are to be covered. Such indiscriminate application could on occasion lead to unjust results, as where, in a setting having nothing to do with public protection, someone acquires, perhaps by design, wholly unimpeachable goods or services and cynically refuses to pay. Under these circumstances, a windfall of the first magnitude should not be the product of inflexible rule, particularly where the statute is silent, and, a fortiori, where the statute suggests the very opposite, and makes room for equity.

Because of the potential for unfairness, one jurisdiction has enacted a provision by which a party could not assert a no-licensing defense to an action on the contract unless it affirmatively showed that notice of the licensing requirements had been given to the plaintiff prior to or upon the execution of the contract *(First Charter Land Corp. v Middle Atl. Dredging,* 218 Va 304, 237 SE2d 145). Other courts have sought to prevent unjust enrichment to defendants by allowing plaintiffs to recover in quantum meruit *(e.g., Wood v Black,* 60 So 2d 15 [Fla]; *Magill v Lewis,* 74 Nev 381, 333 P2d 717; *Fischer v Rakagis,* 59 NM 463, 286 P2d 312; *Hagberg v Bailey Contr.,* 435 So 2d 580 [La]), or on the basis of equitable considerations *(Rose v Tarman,* 17 Wash App 160, 561 P2d 1129), or bureaucratic impedimenta *(Platt v Locke,* 11 Utah 2d 273, 358 P2d 95; *see also, Meade v Lamarche,* 150 App Div 42).

It should come as no surprise that over the years the jurisprudence in this field has undulated, prompting Corbin to suggest that the "older rule" (by which attempts at recovery by the unlicensed are indiscriminately cut off) is giving way to "the trend of well-reasoned modern authority" (6A Corbin, Contracts § 1512, at 683 [1989 Supp]), by which "courts do not have to give large forfeitures automatically on non-compliance with a licensing statute, but should make the punishment fit the crime" (6A Corbin, Contracts § 1512, at 680 [1989 Supp]).

Williston also observes that "[w]here the illegality of work

done or of materials furnished under a contract is slight, or where judgment for the defendant will impose a severe forfeiture upon the plaintiff, most courts are astute to discover a basis or ground for allowing the plaintiff to recover" (15 Williston, Contracts § 1767, at 264 [3d ed]).

This approach would account for such decisions as *Moglen v Gasper* (4 Misc 2d 368 [recovery by unlicensed electrician]), *Lusardo v Harper* (116 NYS2d 734 [recovery by unlicensed plumber]), *De Paso v Cooper* (43 Misc 2d 160 [recovery by unlicensed plumber]), *Wormuth v Lower Eastside Action Project* (71 Misc 2d 314 [applying estoppel concepts]), *Lindner Appraisal Corp. v Frewil Corp.* (72 Misc 2d 1041 [quantum meruit recovery allowed to unlicensed home improvement contractor]), and *Gargano v Smith* (97 Misc 2d 535 [allowing limited recovery to unlicensed contractor]). It also explains the opinion in *Thistle v Englert* (103 AD2d 268), written 16 years after *Richards,* in which the operation of an unlicensed automobile repair shop did not preclude recovery for services. Such a forfeiture would be disproportionate to the violation, the *Thistle* court held. It is precisely the kind of equity-balancing stance that is needed and has been afforded to a court on a motion to amend the complaint under CPLR 3015 (e). The discretion should, I submit, be reserved for those cases and those types of contracts that are transacted in the context of *malum prohibitum* licensing regulations, and where the equities call for it.

*Rosasco (supra)* has never been overruled, and indeed has coexisted with *Richards (see, e.g., Murray Walter, Inc. v Sarkisian Bros.,* 107 AD2d 173; *Cohen v Daughters of Sarah Nursing Home Co.,* 79 AD2d 1042) as enduring authority for the proposition that courts are free to, and should, examine the particular regulatory scheme involved and decide how to further the purposes of the statute compatibly with what is fair.

As this court recently held: " 'Where contracts which violate statutory provisions are merely *malum prohibitum,* the general rule does not always apply. If the statute does not provide expressly that its violation will deprive the parties of their right to sue on the contract, and the denial of relief is wholly out of proportion to the requirements of public policy * * * the right to recover will not be denied' " *(Lloyd Capital Corp. v Pat Henchar, Inc.,* 152 AD2d 725, 727 [citing *Rosasco Creameries v Cohen, supra]).*

Considering that the decisional law can easily stand an interpretation under which recovery by an unlicensed seller

or provider may be authorized in certain cases, I do not read CPLR 3015 (e) as leaving no discretion so as to close the door on the very opportunity that the Legislature has provided when it expressly allowed the amendment of a complaint to allege an after-acquired license.

Although the legislative material does not deal directly with the issue of after-acquired licenses, the background provides some insights as to when the exercise of discretion calls for varying results. Judging by the contents of the bill jacket, the dominant themes are license program effectiveness, consumer protection, and revenue collection (see, July 12, 1983 mem of State Consumer Protection Bd; July 23, 1983 mem of Attorney-General; July 7, 1983 Letter of Approval by Off of Mayor of City of NY). Its exponents also discussed the consumer benefits to be gained by shifting to the plaintiff the burden of pleading the license rather than having the burden remain on the defendant to raise the no-license affirmative defense (July 23, 1983 mem of Attorney-General).

When first enacted, CPLR 3015 (e) (L 1983, ch 817) took in only the Department of Consumer Affairs of the City of New York. That agency licenses dozens of enterprises ranging from "stoop line stands" for "bootblacks" to canvassers for photographers to waste removal operations (see, Administrative Code of City of New York §§ 20-236, 20-332). Some relate to health and welfare, while others, in any but the most remote sense, do not, and are licensed primarily for revenue purposes.

With regard to home improvement contractors we have an express declaration of New York City's legislative motivations. Administrative Code § 20-385 contains this language: "It is the purpose of the city council in enacting this subchapter to safeguard and protect the homeowner against abuses and fraudulent practices by licensing persons engaged in the home improvement, remodeling and repair business". Ostensibly, the purpose of the law, insofar as it relates to home improvement contractors, is to protect the public.

Because the licensing concept in New York City involves sizeable amounts of revenue, CPLR 3015 (e) was supported as a revenue measure in addition to one that promotes public protection and licensing compliance (July 21, 1983 Letter of Sponsoring Senator Donald M. Halperin). Indeed, the bill was said to be patterned after Business Corporation Law § 1312 which requires a plaintiff foreign corporation doing business in New York to plead its license or its after-acquired license to do business in New York. Letters from the Office of the Mayor

of the City of New York and the Attorney-General supporting CPLR 3015 (e) pointed out that the provision is parallel to or modeled after Business Corporation Law § 1312. As the plaintiff points out, there is no suggestion that a foreign corporation may not successfully plead the acquisition of a license that was obtained, for the first time, after suit was brought. Indeed, the unlicensed corporation will not be barred from bringing an action and may cure the defect nunc pro tunc (*Virgilio Flores, S. A. v Jerome Radelman, Inc.,* 567 F Supp 577; *Tri-Terminal Corp. v CITC Indus.,* 78 AD2d 609).

It cannot be unqualifiedly stated that CPLR 3015 (e) was drawn solely for public protection purposes on the one hand, or for revenue purposes on the other. The objectives were dual, and the prospective licensees vary, so that the litmus test used for the resolution of legions of cases, as falling into one category or the other (*see,* Annotation, *Failure of Building and Construction Artisan or Contractor to Procure Business or Occupational License as Affecting Enforceability of Contract or Right of Recovery for Work Done—Modern Cases,* 44 ALR4th 271, 276; 45 NY Jur, Permits and Licenses, § 33; Annotation, *Failure to Procure Occupational or Business License or Permit as Affecting Validity or Enforceability of Contract,* 30 ALR 834, 843; Annotation, *Failure of Artisan or Construction Contractor to Procure Occupational or Business License or Permit as Affecting Validity or Enforceability of Contract,* 82 ALR2d 1429, 1432, 1450; 51 Am Jur 2d, Licenses and Permits, § 66) are not conclusive here. Nor is it comfortable to say that CPLR 3015 (e) and Business Corporation Law § 1312 are congruent, considering that Business Corporation Law § 1312 has a provision by which the Legislature specifically declared that the validity of a foreign corporation's contract shall not be impaired for failure of authorization to do business in New York.

After the initial enactment of CPLR 3015 (e), the statute was expanded, seriatim, to include the Department of Consumer Affairs of Nassau, Suffolk, and Rockland Counties (L 1984, ch 243; L 1985, ch 26; L 1986, ch 26).

With regard to the Nassau County Department of Consumer Affairs, it is significant that the *only* enterprise it licenses is home improvement contractors (*see,* Local Laws, 1970, No. 6, of County of Nassau). In contrast, there are numerous other types of prospective licensees under the jurisdiction of the authorities named in CPLR 3015 (e), particularly in the City of New York. Because all licenses do not fall under the category of public protection, the statute should not be read so

broadly as to eliminate discretion or to foreclose those types of actions that would be authorized under *Rosasco.* In our case, Nassau County has vested its Department of Consumer Affairs with but one class of licensee, namely, home improvement contractors, a field that has been expressly identified as falling within the aegis of regulatory, consumer protection. In this case there are no features asserted suggestive of fraud, over-reaching, estoppel, or any other equitable considerations *(cf., Millington v Rapoport,* 98 AD2d 765) that go beyond the commercial dispute alleged.

The Supreme Court considered itself to be without any choice in reaching the result that it did. When a court acts under the belief that its ruling is mandatory, but in fact has the discretion to do otherwise, our court need not disturb the result if it may, as in this case, be properly based on the exercise of discretion *(Lyke v Anderson,* 147 AD2d 18).