KEWANEE PRIVATE UTILITIES CO. v. RUNZEL.

1. BILLS AND NOTES—COLLATERAL FOR ANTECEDENT DEBT—HOLDER IN DUE COURSE.
   Under negotiable instruments law, holder of notes taken as collateral for antecedent debt is holder in due course (2 Comp. Laws 1929, §§ 9274, 9276).

2. SAME—MEMORANDUM ON NOTE—NEGOTIABLE INSTRUMENTS.
   Memorandum at bottom of note given in payment of membership in golf club, referring to membership number, in no way affected its negotiability.

As to effect of marginal notations upon a bill or note, relating to time of payment, see L. R. A. 1918C, 347.

3. Same—Material Alteration—Detachment—Appeal and Error. Where notes attached to application for membership in golf club were detachable, so that payee, who was other than golf club, could discount them, and question of material alteration by detaching was not passed on by trial judge, Supreme Court assumes, in view of record, that application was detached before delivery of notes to payee.

Appeal from Muskegon; Vanderwerp (John), J. Submitted October 27, 1931. (Docket No. 108, Calendar No. 35,963.) Decided December 8, 1931. ·

Assumpsit by Kewanee Private Utilities Company, an Illinois corporation, against Roy H. Runzel on promissory notes. Judgment for plaintiff. Defendant appeals. Affirmed.

*Harold H. Smedley* (*R. Glenn Dunn*, of counsel), for plaintiff.

*Alexis J. Rogoski*, for defendant.

Sharpe, J. The articles of incorporation of the Lincoln Golf Club were filed on September 10, 1926. It was organized for profit by a number of the business men of the city of Muskegon. On September 15th the defendant signed an application for a "Founders Life Membership" therein, in which he agreed to pay therefor the sum of $500, payable $100 in cash and $100 on February 15th in 1927, 1928, 1929, and 1930, "as set forth on attached notes." Below his signature thereto appeared, "Make all checks and notes payable to the Miller Landscape Service, Muskegon, Mich." The paper below the signature was perforated, and followed by four promissory notes in the usual form, each being separated from the one preceding it by perforations. These notes were all made payable "to the order of The Miller Landscape Service, at their office, Muskegon, Michigan," and bore interest at the rate of six

per cent. per annum, payable semi-annually, and seven per cent. after maturity until paid. LaVern A. Miller was doing business under the name "Miller Landscape Service." At the bottom of each note was printed, "L. G. C. Membership No. ........."

The defendant testified:

"The purpose of signing the notes payable to Miller was that he was to discount the notes and turn the money over to the Lincoln Golf Club. He represented that he had financial connections that would enable him to thus discount the notes."

It appears that Miller received the application and these notes from the defendant, and turned them over to Mr. Bodine, the treasurer of the company, and that he gave them back to Miller for the purpose of negotiating them to obtain funds for the company.

The plaintiff's first business relation with Miller was in 1925, at which time it furnished him with a water system for a golf club at Charlevoix. It extended credit to him under the name of the "Miller Landscape Service." On September 1, 1926, he was indebted to it in the sum of $1,164.80. This account was placed in the hands of a collection agency. Miller offered to turn over to it some notes he claimed to have received in payment for work done on a country club at Muskegon. The plaintiff agreed to accept them as collateral to Miller's personal note for the amount. Defendant's notes were left with plaintiff's president on December 30, 1926, indorsed "Miller Landscape Service Lavern A. Miller," and later Miller sent plaintiff his note, dated September 1, 1926, for the amount, payable in one year, which stated on its face that $1,200 collateral notes were given. Miller's note was not paid when due, and this action is brought to recover on defendant's notes. Only three of them were due when this action

was begun, but it was stipulated in the record that, as the fourth note was due at the time of trial, the judgment, if in plaintiff's favor, should include this note also.

The case was tried before the court without a jury, and resulted in a judgment for plaintiff for $516. The defendant has appealed.

1. It is urged that "The notes having been taken as collateral for an antecedent debt, plaintiff is not a *bona fide* holder thereof for value."

The trial court held that decision of this question was controlled by the following provisions of our negotiable instruments law (2 Comp. Laws 1929, § 9248 *et seq.*):

SEC. 9274. "Value is any consideration sufficient to support a simple contract. An antecedent or pre-existing debt constitutes value, and is deemed such whether the instrument is payable on demand or at a future time."

SEC. 9276. "Where the holder has a lien on the instrument, arising either from contract or by implication of law, he is deemed a holder for value to the extent of his lien."

This act was a codification of the law then existing relating to such instruments, although some changes were made therein. The sections above quoted were copied without change from the "Negotiable instruments law" enacted in 1905 (Act No. 265, §§ 27 and 29). In *Graham* v. *Smith,* 155 Mich. 65, it was held that these sections changed the rule theretofore prevailing in this State, and that the holder of a negotiable instrument, given as collateral security for an existing debt, would be deemed a holder for value to the extent of the amount due him. The decision in that case has been cited with approval in *Marshall & Ilsley Bank* v. *Mooney,* 205 Mich. 513, and in *The Molsons Bank* v. *Wolf,* 224 Mich. 526, and must be accepted as the settled law of this State.

2. The memorandum at the bottom of the note, "L. G. C. Membership No. ........," in no way affected its negotiability. *Preston* v. *Whitney,* 23 Mich. 260; *Wright* v. *Traver,* 73 Mich. 493 (3 L. R. A. 50); 3 R. C. L. p. 915.

3. It is urged that Miller detached these notes from the application for membership, and that such action on his part "was a material alteration of that instrument," and rendered the notes "inoperative, null and void." The record is not clear as to when the notes were detached from the application. Neither the treasurer of the club, who delivered the notes to Miller, nor Miller himself were called as witnesses. The purpose of making the notes payable to him under the name in which he did business was clearly stated by the defendant as above quoted. This purpose could be effected only by detaching them from the application for membership at the time of their delivery to him, as he might, under the arrangement made for disposing of them, have discounted each of them with a different party. He had no concern with the application, and its place was in the files of the officials of the corporation. Henry Frost, who was at that time its secretary, testified that Mr. Bodine, the treasurer, "released" the notes to Miller. This question was not passed on by the trial judge in the opinion filed by him, and on this record we think it should be assumed that the application was detached before the delivery of the notes to Miller.

In our opinion, the finding of the trial court that the plaintiff was a holder of these notes in due course, and for a valuable consideration, was warranted.

The judgment is affirmed.

BUTZEL, C. J., and WIEST, CLARK, McDONALD, POTTER, NORTH, and FEAD, JJ., concurred.