GREEN v INGERSOLL

Docket No. 78-1777. Submitted February 8, 1979, at Grand Rapids.—
Decided March 20, 1979.

Richard M. Green and Sandra L. Green entered into an agree-
ment with Robert E. Ingersoll and Pauline Ingersoll for the
purchase of a home. The Greens assumed an existing mortgage,
made a down payment and agreed to execute a second mortgage
in the amount of $6,400. This amount was reduced to $5,758.51
due to agreed-upon work done by Mr. Green on the house.
Shortly thereafter the Greens began to experience problems
with the house. Ingersoll, after attempting to remedy the
problems, filed an affidavit of lien stating that the Greens had
failed to execute the note and mortgage in accordance with
their agreement. The Greens then sold the house to Roy and
Sharon Bennett but because of the recorded affidavit of lien the
title insurance company required delivery of $8,900 into an
escrow account until the issue of liability on the mortgage
mentioned in the affidavit was settled. The Greens filed a
complaint against the Ingersolls in Kent Circuit Court, claim-
ing that the defendants could not enforce their claim against
plaintiffs because Robert Ingersoll did not have a residential
builder's license when the house was constructed, and for other
equitable relief. Defendants counterclaimed for the balance due
on the agreed upon but unexecuted second mortgage claiming
that Ingersoll had built the house for his own use and occu-
pancy until a sale could be accomplished, that the house was
used as a storage place for equipment, he and his son spent two
nights in the house to protect it against Halloween vandalism,
the house was always open to the public, and therefore, they
were exempt from the requirement of obtaining a license under
the residential builders licensing act and could maintain the

REFERENCES FOR POINTS IN HEADNOTES

[1] 13 Am Jur 2d, Building and Construction Contracts §§ 130, 131.
    13 Am Jur 2d, Buildings § 8.
[2, 4] 51 Am Jur 2d, Licenses and Permits §§ 34, 35.
[3] 51 Am Jur 2d, Licenses and Permits § 35.
[5] 27 Am Jur 2d, Equity §§ 131-135.

counterclaim. Judgment for defendants, George V. Boucher, J. Plaintiffs appeal. *Held:*

1. An unlicensed residential builder who builds a house for sale and not for his own use and occupancy is not exempt from obtaining a license under the residential builders licensing act. To avoid the license requirement an unlicensed builder is required to present evidence of his own practical and substantial use of a building for the purpose for which it was designed. The storage of equipment, use as a model home or spending two nights in the house to prevent Halloween vandalism cannot reasonably be interpreted as substantial use; therefore, the residential builders licensing act divested the Ingersolls of the power to seek, by way of complaint or counterclaim, a money judgment against the Greens.

2. This decision, however, does not end the court's inquiry. A person who seeks equity must be prepared to do equity. A violation of a provision in the residential builders licensing act which prevents an unlicensed builder from bringing suit is not a bar to relief in an equitable action. Plaintiffs have invoked the powers of equity. There may be outstanding equitable claims against them. Therefore, the court is bound to determine the relative equitable rights of the parties in fashioning the appropriate relief. The case is remanded to the circuit court for a determination of the equitable rights of the parties. If the court determines that the Greens are entitled to the equitable relief which they seek, then the court must also determine what the Greens must pay the Ingersolls in order to do equity.

Reversed and remanded.

1. LICENSES — RESIDENTIAL BUILDERS — RESIDENTIAL BUILDER'S ACT — OCCUPANCY — SUBSTANTIAL USE — ATTORNEY GENERAL'S OPINIONS.

Generally, a building is not occupied within the meaning of the residential builders licensing act until it is put to a practical and substantial use for which it was designed (OAG 1975-1976, No. 4782).

2. LICENSES — RESIDENTIAL BUILDER'S ACT — PURPOSE — PROTECTION OF HOMEOWNERS — USE AND OCCUPANCY — EXEMPTIONS — STATUTES.

The purpose of the residential builders licensing act is the protection of homeowners and persons undertaking to become homeowners; according to the statute, residential builders do not include those persons who erect residential structures for their own use and occupancy on their own property but it is clear

that only that those builders who actually build residential structures on their own property for the purpose of personally using and occupying the structures are exempt from the requirement of obtaining a builder's license (MCL 338.1501 *et seq.,* MCL 338.1503[b]; MSA 18.86[101] *et seq.,* 18.86[103][b]).

3. LICENSES — RESIDENTIAL BUILDER'S ACT — EXEMPTIONS — USE AND OCCUPANCY — STATUTES.

An unlicensed builder claiming exemption under the residential builders licensing act is required to present evidence of his own practical and substantial use of a building for the purpose for which it was designed (MCL 338.1503[b]; MSA 18.86[103][b]).

4. LICENSES — RESIDENTIAL BUILDER'S ACT — EXEMPTIONS — USE AND OCCUPANCY — BUILDER'S POWER TO SUE.

An unlicensed builder who builds a house for the purpose of sale and not for his own use and occupancy is not exempt from the requirement for a builder's license under the residential builders licensing act and for this reason is divested of the power to sue by way of complaint or countercomplaint for a money judgment against the purchaser of the house.

5. EQUITY — LICENSES — RESIDENTIAL BUILDER'S ACT — EQUITABLE CLAIMS — EQUITABLE RIGHTS — APPROPRIATE RELIEF.

It is a cardinal principle that equity will not aid a party in doing that which is not equitable because he who seeks equity must be prepared to do equity and a violation of a provision in the residential builders licensing act which prevents an unlicensed builder from bringing suit for a money judgment is not a bar to relief in an equitable action; therefore, where the powers of equity are invoked by a plaintiff who may have claims against him, the court is bound to determine the relative equitable rights of all parties in fashioning the appropriate relief.

*Mohney, Goodrich & Titta* (by *Robert D. Vanderlaan),* for plaintiffs.

*Bergstrom, Slykhouse & Shaw, P.C.* (by *Craig S. Neckers),* for defendants.

Before: D. F. WALSH, P.J., and J. H. GILLIS and T. M. BURNS, JJ.

D. F. WALSH, P.J. Plaintiffs, Richard and Sandra

Green, appeal the entry of judgment for defendants, Robert and Pauline Ingersoll, in the amount of $5,758.51, plus 6% interest from July 20, 1977. The judgment was awarded on defendants' counterclaim against plaintiffs; plaintiffs' complaint was dismissed with prejudice.

Defendant, Robert Ingersoll, a residential builder since 1951, purchased 14 parcels of property in Kent County. On November 4, 1970, the township issued a building permit to him for construction of a house on the lot at 7660 Hessler Drive, Rockford, Michigan. Construction was completed in May 1971, at which time a certificate of occupancy was issued. Mr. Ingersoll built a total of 13 houses on the 14 lots. The house at 7660 Hessler Drive was used by the Ingersolls as a model home. The garage of the house was used as a storage place for equipment and other items owned by defendants. Mr. Ingersoll and his son spent two nights in the house to protect it against Halloween vandalism. The house was at all times open for sale to the general public. During construction and after completion there were offers to purchase which did not result in sale of the house.

In June 1972, plaintiffs and defendants entered into a buy-sell agreement for the house at 7660 Hessler Drive. The purchase price was $41,400. Plaintiffs assumed an existing mortgage and made a down payment of approximately $5,000. They also agreed to execute a second mortgage in favor of defendants in the amount of $6,400. This amount was reduced to $5,758.51 due to agreed-upon work done by Mr. Green on the house. It is undisputed that Mr. Ingersoll did not have a residential builders license during construction of the house or at the time of sale.

Within a few months plaintiffs began to experi-

ence problems with the house. Mr. Ingersoll visited the house in an attempt to remedy the problems.

On July 16, 1974, defendants filed an affidavit of lien with the Kent County Register of Deeds. In the affidavit they stated that plaintiffs had failed to execute the note and mortgage in accordance with their 1972 agreement. The affidavit's purpose was to notify subsequent purchasers that defendants claimed a lien on the property in the amount still owing to them for the home.

On July 11, 1977, plaintiffs sold the house to third-party defendants, Roy and Sharon Bennett. Because of the recorded affidavit of lien the title insurance company involved in the sale required delivery of $8,900 into an escrow account until the issue of liability on the mortgage mentioned in the affidavit was settled.

Plaintiffs filed a complaint against defendants on July 20, 1977. They claimed, *inter alia,* that defendants could not enforce their claim against plaintiffs because Mr. Ingersoll did not have a residential builders license when the house was constructed and sold. MCL 338.1516; MSA 18.86(116). Plaintiffs asked the circuit judge to declare defendants' lien illegal and void and to set aside the cloud on the title; to release the escrow funds to plaintiffs; to order defendants to pay the attorney fees and costs incurred by plaintiffs in removing the cloud from the title; to order defendants to release to plaintiffs all right, title and interest claimed by defendants in the property and to declare that defendants had no rights, title or interest therein; to bar defendants from maintaining any action against plaintiffs for money due on the home; and to grant such further relief as would accord with equity and good conscience. Defendants counterclaimed for the balance due on the agreed-upon but unexecuted second mortgage.

After hearing the testimony of Mrs. Green and Mr. Ingersoll, the trial court found that Mr. Ingersoll had built the house "for sale but also for his own use and occupancy until that sale could be accomplished". The judge found that the house had been "used and occupied by him [Mr. Ingersoll] as an office, storage facility and showcase for open houses; also overnight on two occasions".

The trial judge concluded that the transaction between plaintiffs and defendants was exempt from the requirements of the residential builders licensing act, MCL 338.1501 *et seq.;* MSA 18.86(101) *et seq.,* for the reason that defendants came within the statutory exemption from the licensing requirement for "owners of property, with reference to structures thereon for their own use and occupancy". MCL 338.1503(b); MSA 18.86(103)(b). Accordingly, the court ruled that § 16 of the act did not bar defendants' counterclaim for a money judgment against plaintiffs. MCL 338.1516; MSA 18.86(116).

On appeal defendants, in support of the result reached by the trial court, argue that, since they did not enter into a construction contract with plaintiffs, the residential builders licensing act does not apply to them. The act's definition of residential builder, however, expressly includes a "person who erects a residential structure except for his own use and occupancy on his own property". MCL 338.1502(b); MSA 18.86(102)(b). To come within the act's purview, a builder need not enter into a contract for construction with a particular buyer. Unless one of the statutory exemptions applies, defendants are precluded from seeking a money judgment against plaintiffs in connection with the sale of the house.

As noted above, the trial court relied on the

statutory provision which exempts from the licensing requirement owners of property who build structures thereon for their own use and occupancy. MCL 338.1503(b). It is undisputed that defendants "used" the house. What is at issue is whether it was also "occupied" by them so as to remove them from the § 16 prohibition against suit by unlicensed builders. The trial judge adopted the following broad definition of occupancy: "to take or enter upon possession of; to hold possession of; to hold or keep for use; to possess; to tenant; to do business in". Black's Law Dictionary (4th ed 1968), p 1231.

In construing the term "occupancy" as used in another section of the residential builders licensing act, the Attorney General, noting the significance of the act's purpose to protect consumers, expressed approval of the following definition from *American & Foreign Ins Co v Allied Plumbing & Heating Co,* 36 Mich App 561, 565; 194 NW2d 158 (1971), *lv den* 387 Mich 753 (1972): "ordinarily a building is not * * * 'occupied' until it is put to a practical and substantial use for which it was designed * * *." OAG 1975-1976, No. 4782, p 70 (April 30, 1975).

The Legislature has described the purpose of the residential builders licensing act as the protection of homeowners and persons undertaking to become homeowners. MCL 338.1501; MSA 18.86(101). The provisions of the act must be construed with this legislative purpose in mind. *Tracer v Bushre,* 381 Mich 282, 290; 160 NW2d 898 (1968), *Artman v College Heights Mobile Park, Inc,* 20 Mich App 193, 199; 173 NW2d 833 (1969). According to the act, residential builders do not include those persons who erect residential structures "for [their] own use and occupancy on [their] own property".

MCL 338.1502(b). Construing the exemption section together with this definitional provision, it is clear that the Legislature intended to exempt only those builders who actually build residential structures on their own property *for the purpose of* personally using and occupying the structures.

In view of the legislative directive that the act is to protect homeowners, we adopt the Attorney General's approach and require the unlicensed builder claiming exemption under MCL 338.1503(b) to present evidence of his own practical and substantial use of the building for the purpose for which it was designed.

The sole reasonable interpretation of the evidence presented by the instant parties is that Mr. Ingersoll built the house at 7660 Hessler Drive for the purpose of sale as a dwelling and not for his own use and occupancy. The two nights he and his son spent in the house cannot reasonably be interpreted as substantial use of the building for the residential purpose for which it was designed. Nor do the storage of equipment and other items and the use of the house as a model home constitute the "occupancy" clearly contemplated by the Legislature.

Because Mr. Ingersoll was not licensed during the construction or sale of the house, the act divested him of the power to seek (by way of complaint or counterclaim) a money judgment against plaintiffs. *Charles Featherly Construction Co v Property Development Group, Inc,* 400 Mich 198, 203; 253 NW2d 643 (1977).

Proper disposition of this case, however, does not end with reversal of the entry of judgment in defendants' favor. The Supreme Court recently discussed the significance of the equitable nature of the plaintiff home-buyer's suit as it relates to

the defendant seller's concurrent right to be treated equitably. In *Kirkendall v Heckinger,* 403 Mich 371; 269 NW2d 184 (1978), the plaintiffs filed suit requesting equitable relief in the form of either conveyance of a parcel of property, on which defendant Carl Heckinger had built a home at plaintiffs' direction, provided plaintiffs pay a certain sum of money to defendants, or alternatively a money award from defendants to prevent unjust enrichment. The defendant builder, who was unlicensed, counterclaimed for a sum representing, *inter alia,* the cost of his labor and materials. Citing § 16 of the residential builders licensing act, the trial court dismissed the counterclaim. The Supreme Court concluded that the trial court correctly dismissed the counterclaim but nonetheless remanded to the circuit court for a determination of the amount of reasonable expenses the plaintiffs (Kirkendalls) were to pay defendants (Heckingers) on conveyance of the property:

"Heckinger, whether a plaintiff or as here a counter-claimant, could not seek a money judgment against the Kirkendalls because of the statute. The trial court was consequently correct in dismissing the counterclaim.

"That does not end our inquiry, however.

" 'It is a cardinal principle that equity will not aid a party in doing that which is not equitable. He who seeks equity must be prepared to do equity.' *Goodenow v Curtis,* 33 Mich 505, 509 (1876).

"See, also, *Bonninghausen v Hansen,* 305 Mich 595; 9 NW2d 856 (1943).

"The plaintiffs sought an equitable remedy. Before ordering the conveyance to Dennis Kirkendall, the trial court was obliged to determine the amount the plaintiffs were required to pay the defendants in order to do equity. As the equitable mortgagee, Heckinger was entitled as a condition to reconveyance to reasonable expenditures for improvements on the property made

with the Kirkendalls' consent (and in fact with Dennis Kirkendall's active participation) while Heckinger had title to the property. Osborne, Mortgages, §§ 169-170; 4 Pomeroy's Equity Jurisprudence (5th ed), § 1217." *Id.,* at 374.

So too in this case, as noted by the trial judge, it was plaintiffs who first invoked the equity powers of the court. Although we disavow the trial judge's definition of "use and occupancy" and hold that the court was precluded, under the statute, from granting defendants any relief on their counter-claim, he was bound to determine the relative equitable rights of all parties in fashioning the appropriate relief.

We therefore reverse the judgment entered for defendants and remand this case to the circuit court for a determination of the equitable rights of the parties. If the court determines that plaintiffs are entitled to the equitable relief which they seek, it shall also determine what plaintiffs must pay defendants in order to do equity.

Reversed and remanded for proceedings consistent with this opinion. No costs, each party having partially prevailed.