BARBOUR v HANDLOS REAL ESTATE AND BUILDING
CORPORATION

Docket No. 74303. Submitted July 8, 1985, at Grand Rapids. Decided
June 2, 1986. Leave to appeal applied for.

Defendant Thomas A. Handlos was licensed both as a real estate
broker and a residential builder. In 1976, he joined his mother's
Grosse Pointe Woods real estate office as an associate broker
and subsequently did business as a residential builder at her
office. In 1978, his mother, Lucile M. Handlos, opened a branch
office of Handlos Real Estate in Houghton Lake and placed
Thomas in charge of the office. Thomas commenced doing
business as a residential builder out of the new office and
named his business Handlos Building Company. Lucile was not
involved in the operation of the Houghton Lake office. Defen-
dant Alphonse A. Handlos, Thomas's father and Lucile's hus-
band, was only minimally involved in the real estate and
building businesses, on occasion having answered the phone at
his wife's office and having prepared a few blueprint drawings
for his son. Thomas combined his real estate and building
activities under the name of Handlos Real Estate and Building
Company and adopted a unique logo, which he used in conjunc-
tion with the National Association of Realtors registered trade-
mark which was licensed to Handlos Real Estate. Thomas was
unable to register the new business name because of its similar-
ity to the name Handlos Real Estate registered to his mother.
Thomas incorporated Handlos Real Estate and Building Corpo-
ration. The corporation was never licensed as a residential
builder as required by statute but continued doing the building
work begun by Thomas as an individual. The corporation also
continued using the same logo, stationery and checking ac-
counts used by the unincorporated business. Thomas was the
sole shareholder, officer and director of the corporation. Plain-

REFERENCES

Am Jur 2d, Appeal and Error § 736.

Am Jur 2d, Bills and Notes §§ 70, 71, 424-426, 460, 461.

Am Jur 2d, Interest and Usury §§ 1, 2, 63.

Am Jur 2d, Mechanics' liens §§ 281, 282.

See the annotations in the ALR3d/4th Quick Index under Bills and
Notes; Mechanics' Liens; Mortgages; Usury.

tiff, George T. Barbour, signed a building agreement to have a chalet built by the corporation. The agreement required a $3,000 down payment and was contingent on a mortgage for $21,990. On the same date, plaintiff applied for a mortgage from the corporation. Plaintiff paid the $3,000 deposit and Thomas then used his individual residential builder's license to obtain a building permit. Thomas notified plaintiff by letter that he had accepted plaintiff's mortgage application. The letter stated that the mortgage would be subject to a twelve percent annual interest rate and a $5 charge for late payment and would be finalized upon payment of closing costs of $533 as itemized in the letter. A subsequent letter indicated that the interest rate was lowered to eleven percent "due to regulations of the government." On August 15, 1979, plaintiff signed the mortgage and mortgage note. As written, the mortgage papers indicated the mortgagee as Thomas A. Handlos. Plaintiff commenced payment on the mortgage in October, 1979, to an account at Roscommon State Bank. During construction of plaintiff's chalet, a dispute arose between Thomas and Wickes Corporation, doing business as Wickes Lumber, regarding payment for some defective materials which Thomas had purchased. On November 14, 1979, plaintiff received a notice from Wickes of its intention to claim a lien on his property. Plaintiff called defendants about the lien and was assured by Thomas not to worry about it. Plaintiff received the keys to his chalet in February, 1980, although it was not quite completed. The chalet was subsequently completed and plaintiff was satisfied with the work. On February 27, 1980, Wickes recorded its lien. On August 21, 1980, Wickes' attorney wrote to Thomas, with copy to plaintiff, stating that foreclosure proceedings would be initiated if arrangements for settlement of the debt and discharge of the mechanic's lien were not made within ten days. In the meantime, plaintiff had engaged counsel and withheld his mortgage payment for August, 1980. Plaintiff also withheld payment for September, 1980, and demanded that Thomas discharge the Wickes lien. On September 29, 1980, Wickes executed a full and final waiver of the lien. On October 4, 1980, Thomas informed plaintiff that the mortgage and note had been assigned, but he refused to disclose the identity of the assignees. On October 17, 1980, Lucile and Alphonse, as assignees, sent plaintiff a letter demanding payment and imposing a late fee of $15 per overdue monthly installment. Lucile and Alphonse also had their attorney send plaintiff a letter warning that foreclosure proceedings would be instituted if payment was not made. Thomas had assigned plaintiff's mortgage and note to his parents on January 31, 1980, along with two other

mortgages. Lucile drafted the assignments, which were signed by Thomas individually. The assignments constituted repayment for several personal loans made to Thomas by his parents. Plaintiff brought an action in the Roscommon Circuit Court seeking equitable relief, a declaration relieving him of liability on the mortgage note and mortgage, and money damages. The court, Carl L. Horn, J., upheld the building agreement, mortgage and note, found no usury question and concluded that the mortgage assignment was a business deal and that Alphonse and Lucile were holders in due course. The court awarded plaintiff $270 which had been estimated and then charged by Thomas as part of the mortgage closing fee even though Thomas had not incurred the cost, $170 for phone calls and travel expenses incurred by plaintiff relative to the Wickes lien problem, and $500 for reasonable attorney fees incurred by plaintiff in trying to discharge the Wickes lien. Plaintiff appealed. *Held:*

1. The stipulated statement of facts does not suggest conspiracy, collusion and bad faith by defendants as alleged by plaintiff.

2. The trial court did not clearly err in holding that Lucile and Alphonse Handlos did not know that Thomas Handlos did not have a corporate builder's license.

3. The Court of Appeals did not find evidence of appropriation of the building fund in contravention of the statute.

4. Any usurious thing arising from the letter from Thomas Handlos to plaintiff reciting a twelve percent rate was purged by the note and mortgage provisions for eleven percent interest.

5. Improperly charged mortgage closing costs do not render the note and mortgage usurious as to Lucile and Alphonse Handlos. They had no knowledge or notice of this defense.

6. Lucile and Alphonse Handlos did not render the mortgage and note usurious by charging a late payment fee. Late payment charges do not ordinarily constitute interest for purposes of usury.

7. Lucile and Alphonse Handlos are holders in due course of the mortgage note. Mere receipt of a mortgage does not constitute actual notice of its payment terms where they are different from those on the note secured by the mortgage. Receipt by Lucile and Alphonse Handlos of the mortgage which has a

term rendering the mortgage vicarious does not destroy their holder in due course status.

8. None of plaintiff's other claims deny Lucile and Alphonse Handlos their holder in due course status.

9. Evidence filed for the first time by plaintiff in an appellate brief was not properly before the Court of Appeals.

10. Plaintiff is entitled to no further relief.

Affirmed.

1. BILLS, NOTES, AND CHECKS — NEGOTIABLE INSTRUMENTS — HOLDER IN DUE COURSE — NOTICE — UNIFORM COMMERCIAL CODE.

   Notice, for purposes of defining a holder in due course, includes receiving a notice or notification of a fact or having reason to know that the fact exists from all the facts and circumstances known at the time in question (MCL 440.1201[25], 440.3302; MSA 19.1201[25], 19.3302).

2. MECHANICS' LIENS — FRAUD — CRIMINAL LAW — CONSTRUCTION CONTRACTORS.

   A construction contractor must first pay subcontractors, laborers and materialmen from money paid him under a building contract before appropriating the funds to any other use; failure to do so is a felony (MCL 570.151-570.153; MSA 26.331-26.333).

3. MORTGAGES — USURY — NONQUALIFIED LENDERS.

   Nonqualified lenders may make mortgage loans providing for an interest rate not to exceed eleven percent per annum, inclusive of all amounts defined as the "finance charge" in the federal Truth-in-Lending Act and accompanying regulations; violation bars the lender from recovering any interest, fees, delinquency or collection charge, attorney fees or court costs and the borrower may recover attorney fees and court costs (MCL 438.31c[6], 438.32; MSA 19.15[1c][6], 19.15[2]).

4. USURY — LATE PAYMENT CHARGES.

   Late payment charges do not ordinarily constitute interest for purposes of usury.

5. BILLS, NOTES, AND CHECKS — NEGOTIABLE INSTRUMENTS — NOTICE — COLLATERAL AGREEMENTS — UNIFORM COMMERCIAL CODE.

   A note may put its holder on notice of the existence of a collateral agreement, but that fact does not ordinarily put the holder on inquiry or constructive notice of the contents of or defenses to the collateral agreement; mere receipt of a mortgage does not constitute actual notice of its payment terms where they are different from those on the note secured by the mortgage (MCL 440.3304[4][b]; MSA 19.3304[4][b]).

6. BILLS, NOTES, AND CHECKS — NEGOTIABLE INSTRUMENTS — VALUE
    — UNIFORM COMMERCIAL CODE.
    A holder takes an instrument for value when he takes it in
    payment of or as security for an antecedent debt (MCL
    440.3303[b]; MSA 19.3303[b]).

7. APPEAL — RECORD — EVIDENCE.
    Evidence filed for the first time in an appellate brief is not
    properly before the appellate court for review.

*Bauchan Law Offices, P.C.* (by *Michael L. Bauchan*), for plaintiff.

*Thomas P. Swanson* and *Gromek, Bendure, & Thomas* (by *Daniel J. Wright*), for defendants.

Before: WAHLS, P.J., and ALLEN and J. C. RAVITZ,* JJ.

WAHLS, P.J. Plaintiff commenced an action on October 28, 1980, seeking equitable relief, a declaration relieving him of liability on a mortgage note and mortgage, and money damages. Following a bench trial, the circuit court granted plaintiff partial relief but declined to invalidate the mortgage or its interest payment provisions. Plaintiff appeals as of right, and we affirm.

Defendant Thomas A. Handlos was licensed both as a real estate broker and a residential builder. In 1976, he joined his mother's Grosse Pointe Woods real estate office as an associate broker and subsequently did business as a residential builder at her office. In 1978, his mother, Lucile M. Handlos, opened a branch office of Handlos Real Estate in Houghton Lake, Roscommon County, and placed Thomas in charge of the office Thomas commenced doing business as a residential builder out of the new office and named his business Handlos Build-

_____
* Recorder's court judge, sitting on the Court of Appeals by assignment

ing Company. Lucile registered the name Handlos Real Estate in Wayne County and Roscommon County, and Thomas likewise registered the name Handlos Building Company. Lucile was not involved in the operation of the Houghton Lake office. Defendant Alphonse A. Handlos, Thomas' father and Lucile's husband, was only minimally involved in the real estate and building business, on occasion having answered the phone at his wife's office and having prepared a few blueprint drawings for his son.

Thomas combined his real estate and building activities under the name of Handlos Real Estate and Building Company and adopted a unique logo, which he used in conjunction with the National Association of Realtors registered trademark which was licensed to Handlos Real Estate. Thomas was unable to register the new business name because of its similarity to the name Handlos Real Estate registered by his mother. On May 15, 1979, Thomas incorporated Handlos Real Estate and Building Corporation. The corporation was never licensed as a residential builder as required by statute but continued doing the building work begun by Thomas as an individual. The corporation also continued using the same logo, stationery and checking accounts used by the unincorporated business. Thomas was the sole shareholder, officer and director of the corporation.

In the spring of 1979, Thomas circulated a general advertising flier to Higgins Lake Forest Estates property owners and touted the advantages of building on property "up north." Plainitff received a flier, called the Handlos Real Estate and Building Corporation and spoke with Robert Wieland, a broker licensed in Flint but operating out of Thomas' office, about the possibility of having a home build on his Higgins Lake property. On June

8, 1979, plaintiff signed a building agreement to have a chalet built by the corporation for $24,990. The agreement required a $3,000 down payment and was contingent on a mortgage for $21,990. On the same date, plaintiff applied for a mortgage from the corporation. Plaintiff paid the $3,000 deposit and Thomas then used his individual residential builder's license to obtain a building permit.

On July 2, 1979, Thomas notified plaintiff by letter that he had accepted plaintiff's mortgage application. The letter stated that the mortgage would be subject to a twelve percent annual interest rate and a $5 charge for late payment and would be finalized upon payment of closing costs of $533 as itemized in the letter. A subsequent letter indicated that the interest rate was lowered to eleven percent "due to regulations of the government." On August 15, 1979, plaintiff signed the mortgage and mortgage note. As written, the mortgage papers indicated the mortgagee as Thomas A. Handlos. Plaintiff commenced payment on the mortgage in October, 1979, to an account at Roscommon State Bank.

During construction of plaintiff's chalet, a dispute arose between Thomas and Wickes Corporation, doing businss as Wickes Lumber, regarding payment for some defective materials which Thomas had purchased. On November 14, 1979, plaintiff received a notice from Wickes of its intention to claim a lien on his property. Plaintiff called defendants about the lien and was apparently assured by Thomas not to worry about it. Plaintiff received the keys to his chalet in February, 1980, although it was not quite completed. The chalet was subsequently completed and plaintiff was satisfied with the work.

On February 27, 1980, Wickes recorded its lien.

On August 21, 1980, Wickes' attorney wrote to Thomas, with copy to plaintiff, stating that foreclosure proceedings would be initiated if arrangements for settlement of the debt and discharge of the mechanic's lien were not made within ten days. In the meantime, plaintiff had engaged counsel and withheld his mortgage payment for August, 1980. Plaintiff also withheld payment for September, 1980, and demanded that Thomas discharge the Wickes lien.

On September 29, 1980, Wickes executed a full and final waiver of the lien. On October 4, 1980, Thomas informed plaintiff that the mortgage and note had been assigned, but he refused to disclose the identity of the assignees. On October 17, 1980, Lucile and Alphonse, as assignees, sent plaintiff a letter demanding payment and imposing a late fee of $15 per overdue monthly installment. Lucile and Alphonse also had their attorney send plaintiff a letter warning that foreclosure proceedings would be instituted if payment was not made.

Thomas had assigned plaintiff's mortgage and note to his parents on January 31, 1980, along with two other mortgages. Lucile drafted the assignments, which were signed by Thomas individually. The assignments constituted repayment for several personal loans, of the sum total of $72,640, made to Thomas by his parents. The loans generally were made to Thomas for his business affairs, although one was for the purpose of investing in a condominium project.

Given the above set of facts, plaintiff makes the claim that his building agreement with Handlos Real Estate and Building Corporation is void because the corporation was not licensed as a residential builder as required by MCL 338.1501; MSA 18.86(101), repealed by 1980 PA 299. Because the building agreement is void, the mortgage and

mortgage note must also be void, plaintiff asserts. Even if the mortgage and note are not void, plaintiff argues that the interest rate is usurious and he is entitled to actual attorney fees and costs provided by MCL 438.32; MSA 19.15(2). Plaintiff argues that defendants are not protected by the mortgage assignment because Alphonse and Lucile are not holders in due course. Plaintiff further argues that the assignment of the mortgage violated MCL 570.152, 570.153; MSA 26.332, 26.333, and he is therefore entitled to statutory damages, actual damages for lost work and expenses, and attorney fees and costs.

The trial court upheld the building agreement, mortgage and note, found no usury question and concluded that the mortgage assignment was a business deal and that Alphonse and Lucile were holders in due course. The court awarded plaintiff $270 which had been estimated and then charged by Thomas as part of the mortgage closing fee even though Thomas had not incurred the cost, $170 for phone calls and travel expenses incurred by plaintiff relative to the Wickes lien problem, and $500 for reasonable attorney fees incurred by plaintiff in trying to discharge the Wickes lien.

We note that our review is not based on transcripts of the trial but on a stipulated statement of facts. Whether the actual trial testimony would tell another story we cannot say, but the necessarily condensed statement of facts simply does not suggest the conspiracy, collusion and bad faith by defendants that plaintiff alleges on appeal. To the best that we can discern, this is not a case where defendants are guilty of any fraud, malice, shady dealing or ill intentions toward plaintiff. The circuit court summed up the matter as follows:

The Court finds that the controversy between

> these parties was caused by the action of Wickes
> Lumber to obtain payment for the material it
> furnished for the construction of the chalet. . . .
> To state the same finding another way, there
> never would have been any litigation if the Wickes
> matter had not been injected. The Wickes claim
> was settled on November 12, 1980, by the filing of
> a release of mechanics lien. . . . However, the
> Plaintiff had already filed a lawsuit, and, to use
> the vernacular, the horse was out of the barn.

It appears in this case that plaintiff is seeking to take advantage of several mistakes made by Thomas Handlos through ignorance. While it is commonly said that ignorance of the law is no excuse, our decision in this case reveals that the civil law is not without its limits in imposing penalties on the ignorant.

In the following parts of our opinion, we address plaintiff's defenses to the note and mortgage held by the Handloses and we conclude that the alleged defenses are either no defense or that the Handloses take free of them as holders in due course.

I

MCL 338.1516; MSA 18.86(116), repealed by 1980 PA 299, provided in part:

> No person engaged in the business or acting in
> the capacity of a residential builder and/or resi-
> dential maintenance and alteration contractor
> may bring or maintain any action in any court of
> this state for the collection of compensation for the
> performance of any act or contract for which a
> license is required by this act without alleging and
> proving that he was duly licensed under this act at
> all times during the performance of such act or
> contract.

This statute clearly meant that a residential

builder not duly licensed, whether as a plaintiff or counterclaimant, could not sue for a money judgment. *Kirkendall v Heckinger,* 403 Mich 371, 374; 269 NW2d 184 (1978); *Charles Featherly Construction Co v Property Development Group, Inc,* 400 Mich 198, 203; 253 NW2d 643 (1977). In earlier cases, it was said that contracts by a residential builder not duly licensed were void as against public policy because of the statute. *Bilt-More Homes, Inc v French,* 373 Mich 693; 130 NW2d 907 (1964); *Alexander v Neal,* 364 Mich 485; 110 NW2d 797 (1961); *Brummel v Whelpley,* 46 Mich App 93; 207 NW2d 399 (1973). However, more recent cases have shown that the statute does not deprive unlicensed builders of all rights. In *Parker v McQuade Plumbing & Heating, Inc,* 124 Mich App 469; 335 NW2d 7 (1983), this Court held that the statute was intended to protect the public as a shield, not a sword, and does not prohibit an unlicensed contractor from defending a breach of contract suit on its merits. And in *Kirkendall, supra,* p 374, the Supreme Court stated the following, which is particularly applicable to the instant case:

> Heckinger, whether a plaintiff or as here a counterclaimant, could not seek a money judgment against the Kirkendalls because of the statute. The trial court was consequently correct in dismissing the counterclaim.
>
> That does not end our inquiry, however.
>
> "It is a cardinal principle that equity will not aid a party in doing that which is not equitable. He who seeks equity must be prepared to do equity." *Goodenow v Curtis,* 33 Mich 505, 509 (1876).
>
> See, also, *Bonninghausen v Hansen,* 305 Mich 595; 9 NW2d 856 (1943).
>
> The plaintiffs sought an equitable remedy. Be-

fore ordering the conveyance to Dennis Kirken-
dall, the trial court was obliged to determine the
amount the plaintiffs were required to pay the
defendants in order to do equity. As the equitable
mortgagee, Heckinger was entitled as a condition
to reconveyance to reasonable expenditures for
improvements on the property made with the
Kirkendalls' consent (and in fact with Dennis
Kirkendall's active participation) while Heckinger
had title to the property. Osborne, Mortgages,
§§ 169-170; 4 Pomeroy's Equity Jurisprudence (5th
ed), § 1217.

See also *Green v Ingersoll,* 89 Mich App 228; 280
NW2d 496 (1979).

As did the plaintiffs in *Kirkendall* and *Green,*
plaintiff herein has sought unclouded title to his
property at the expense of the equitable rights of
the mortgagees. To receive equity, he must do
equity. Accordingly, plaintiff must, at the least,
pay for reasonable expenditures incurred by
Thomas Handlos in improving plaintiff's property.

Plaintiff asserts that Lucile and Alphonse must
have known that Thomas did not have a corporate
residential builder's license.[1] We are not persuaded
that the circuit court's conclusion to the contrary
was clearly erroneous. As a builder, Thomas was
not an agent of his mother. His parents were not
affiliated with the buiding operations in Roscom-
mon County except as unsecured creditors.

We are cognizant that actual knowledge of
plaintiff's defense by the holders of the note and

---

[1] This Court has held that an individual and his corporation are not
the same entity for purposes of the licensing act. *Bernard F. Hoste,
Inc v Kortz,* 117 Mich App 448; 324 NW2d 46 (1982). Thomas Hand-
los's holding of a license is probably not "substantial compliance"
with the licensing act on the part of his corporation. *Superior Ameri-
can Homes v Fry,* 130 Mich App 379; 343 NW2d 561 (1983). However,
we do not address the question of substantial compliance. We do note
that, after plaintiff commenced suit, Thomas immediately obtained a
license for the corporation.

mortgage is not required. "Notice" for purposes of MCL 440.3302; MSA 19.3302, defining holder in due course, includes receiving a notice or notification of a fact or having reason to know that the fact exists from all the facts and circumstances known at the time in question. MCL 440.1201(25); MSA 19.1201(25). However, we are not persuaded from the record that Thomas's parents had reason to know of the lack of a corporate license.

II

MCL 570.151; MSA 26.331 provides that the building contract fund paid by a person to a contractor shall be considered a trust fund. MCL 570.152; MSA 26.332 states:

> Any contractor or subcontractor engaged in the building construction business, who, with intent to defraud, shall retain or use the proceeds or any part therefor, of any payment made to him, for any other purpose than to first pay laborers, subcontractors and materialmen, engaged by him to perform labor or furnish material for the specific improvement, shall be guilty of felony in appropriating such funds to his own use while any amount for which he may be liable or become liable under the terms of his contract for such labor or material remains unpaid.

MCL 570.153; MSA 26.333 provides that a contractor's appropriation of any moneys paid him for building operations before he has paid all construction costs is evidence of intent to defraud.

Plaintiff claims that Thomas's assignment of the mortgage to his parents in January, 1980, although work on plaintiff's chalet was not yet completed, was appropriation of moneys paid for building operations in violation of the building contract fund act. The circuit court did not specifi-

cally address this claim of plaintiff and it is not clear to what extent plaintiff litigated the claim at trial. On the record presented to us for review, we can find no reversible error. It appears that the mortgage payments were not paid directly for building operations and that the construction fund, if any, was established by a loan from Thomas's parents. Furthermore, we are convinced that the evidence as a whole does not require a finding that Thomas had intent to defraud.

### III

MCL 438.31c(6); MSA 19.15(1c)(6) permits nonqualified lenders to make mortgage loans providing for an interest rate not to exceed eleven percent per annum, which interest is inclusive of all amounts defined as the "finance charge" in the federal Truth-in-Lending Act and accompanying regulations. If this provision is violated, MCL 438.32; MSA 19.15(2) bars the lender from recovering any interest, any official fees, delinquency or collection charge, attorney fees or court costs and the borrower is entitled to attorney fees and court costs. MCL 438.101; MSA 19.21 provides that, when an installment of interest on a mortgage is due and unpaid, interest may be charged on the due and unpaid interest at the rate specified in the mortgage, not exceeding ten percent. Plaintiff claims that he has four defenses to the mortgage and note arising out of the usury statutes.

### A

Plaintiff claims that defendants are bound by the twelve percent figure stated in Thomas Handlos's letter of acceptance of plaintiff's mortgage application. We disagree. If any usurious taint arose out of the letter, it was purged by the mortgage and note provisions of eleven percent.

*Mathews v Tripp,* 285 Mich 705; 281 NW 412 (1938).

### B

Plaintiff also asserts that some of the mortgage closing costs were improperly charged and rendered the mortgage and note usurious. These costs nowhere appeared in the mortgage or note but were part of a separate agreement between plaintiff and the corporate defendant. While Lucile and Alphonse certainly must have assumed that their son had a building agreement with plaintiff, there is no evidence that they knew or had reason to know of any defense arising out of that agreement. MCL 440.3304(4)(b); MSA 19.3304(4)(b); *Hakes v Thayer,* 165 Mich 476, 486-489; 131 NW 174 (1911).

We note that, as between plaintiff and Thomas, the court rendered judgment for plaintiff for the improperly charged costs.

### C

Plaintiff contends that Lucile and Alphonse Handlos have rendered the mortgage and note usurious by charging a $15 fee for late payment of the monthly installments. This argument fails because late payment charges ordinarily do not constitute interest. OAG, 1981-1982, No 5904, p 199 (May 15, 1981). Plaintiff gives no reason why the charges in this case should be excepted from the general rule.

### D

Plaintiff contends that, because the mortgage provides for eleven percent interest on due and unpaid interest and is usurious pursuant to MCL 438.101; MSA 19.21, Lucile and Alphonse Handlos cannot be holders in due course of the note and mortgage. After careful review of the statement of facts and the law, we are not convinced that the

court below erred reversibly although the question is very close.

We begin our analysis with some observations about the nature of and relationship between notes and mortgages. "It has often been said that a negotiable promissory note is a courier without luggage whose face is its own passport." *Baker State Bank v Grant,* 54 Mont 7, 9; 166 P 27 (1917), quoted in *East Lansing State Bank v Keil,* 213 Mich 17, 20; 180 NW 347 (1920). Thus, while a note may put its holder on notice of a collateral agreement, the holder is thereby ordinarily put on neither inquiry nor constructive notice of the contents of or defenses to the collateral agreement. MCL 440.3304(4)(b); MSA 19.3304(4)(b); *Hakes v Thayer, supra.* In *Howry v Eppinger,* 34 Mich 29, 33 (1876), our Supreme Court stated,

> As we have already said, the words "secured by mortgage" formed no part of the notes. The object and intent of the parties in putting these words upon the notes was not to limit or impair their value, but to add to it. It was not to notify third parties that the mortgage contained some clause inconsistent with the notes, and which would destroy or affect their negotiable character. One object undoubtedly was, to show they were the notes referred to in the mortgage and thus connect them. But the principal one was, to show that in addition to the responsibility of the makers they were also secured by mortgage. If the makers intended to limit the effect of the notes by the terms or conditions of the mortgage securing their payment, they should have done so by language which could admit of no doubt as to its intent and meaning. We think these words were neither sufficient to inform third parties of the contents or terms of the mortgage, or to put them upon inquiry.

The Court went on to note that, in any event, the

note and mortgage were not inconsistent. It does not appear that our courts have yet considered a case on all fours with the instant one, in which the assignees apparently received the note and mortgage together and the mortgage contained a term affecting payment not reflected in the note. Nevertheless, we think the quotation above from *Eppinger* aptly summarizes the instant case. The note on its face appears to comprehensively address payment terms. There is no reason to think that the mortgage, having as its purpose the provision of security, would be inconsistent with the note on the subject of payment. Accordingly, we conclude that mere receipt of a mortgage does not constitute actual notice of its payment terms where they are different from those on the note secured by the mortgage. In the instant case, the record is not convincing that Lucile and Alphonse Handlos had actual notice of the payment terms of the mortgage and, therefore, we do not reverse the finding of the circuit court that the two were holders in due course.[2]

IV

Apart from the claims and defenses discussed in parts I-III, of which plaintiff claims the elder Handloses had notice, plaintiff still maintains that they are not holders in due course. Relying on MCL 440.3302(3)(c); MSA 19.3302(3)(c), plaintiff contends that assignment of his mortgage was part of a bulk transaction not in the regular course of Thomas's business and therefore the assignees cannot

---

[2] Defendant assumes that he is entitled to the relief of MCL 438.32; MSA 19.15(2). However, that provision for penalties and attorney fees applies only to 1966 PA 326. The provision for interest on due and unpaid interest is 1869 PA 11. We express no views on what penalty is imposed or what relief is available where a violation of this latter provision occurs.

be holders in due course. We disagree; we conclude that assignment of the Barbour note and mortgage along with two other notes and mortgages was not a bulk transaction as contemplated by the statute. We note the official UCC Comment which states:

> Subsection (3)(c) applies to bulk purchases lying outside of the ordinary course of business of the seller. It applies, for example, when a new partnership takes over for value all of the assets of an old one after a new member has entered the firm, or to a reorganized or consolidated corporation taking over in bulk the assets of a predecessor. It has particular application to the purchase by one bank of a substantial part of the paper held by another bank which is threatened with insolvency and seeking to liquidate its assets.

Plaintiff also claims that the Handloses did not take "for value" because they did not part with anything of value at the time of receiving the note and mortgage. We disagree. MCL 440.3303(b); MSA 19.3304(b) is clearly applicable here. The statute states that a holder takes an instrument for value when he takes the instrument in payment of or as security for an antecedent claim. In this case, while the Handloses sometimes stated that the assignment was security for their loan to their son, the better view of the evidence is that the assignment was made in full payment of the prior loan. In either case, though, sufficient value was given. *Kewanee Private Utilities Co v Runzel,* 256 Mich 345; 239 NW 325 (1931); *Outhwite v Porter,* 13 Mich 533 (1865).

Plaintiff further claims that the note and mortgage were defective because they were in Thomas' name individually, although Thomas stipulated at trial that the intention was that the corporation be mortgagor. However, whatever Thomas' and

plaintiffs' intent, there is nothing on the face of the note or mortgage to suggest that they were not validly in Thomas' individual name. Nor is there any record evidence suggesting that the Handloses knew or had reason to know that the note and mortgage were not what they appeared to be.

v

Plaintiff lastly argues that he adequately established compliance with the mechanics' lien law, MCL 570.4; MSA 26.284, and he is therefore entitled to damages because of Thomas Handlos' noncompliance. The statute, repealed by 1980 PA 497, provided for a written demand of the contractor for an accounting. The certified statement of facts in the instant case specifically states that there was no demand for an accounting as required by law. It appears that the only demand made of Thomas or his corporation was for payment of Wickes's account and discharge of the lien.

Plaintiff attempts to enlarge the record on appeal with evidence that he did in fact make a demand for an accounting. However, evidence filed for the first time in appellant's brief is not properly before us for review. *Spartan Asphalt Paving Co v Tri-Cities Construction, Inc,* 68 Mich App 305, 309; 242 NW2d 565 (1976).

We note that the court did require Thomas to reimburse plaintiff for the properly identified costs of defending against Wickes' lien. We do not find that plaintiff is entitled to further relief.

Affirmed.